CANAL ELECTRIC COMPANY & others vs. WESTINGHOUSE
ELECTRIC CORPORATION.

Suffolk. November 8, 1989. - January 9, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Supreme Judicial Court*, Certification of questions of law. *Uniform Commercial Code*, Sale of goods, Damages, Unconscionability, Warranty. *Contract*, Sale, Unconscionability, Performance and breach, Damages. *Sale*, Contract of sale. *Damages*, Breach of contract. *Consumer Protection Act*, Businessman's claim, Waiver. *Waiver. Public Policy.*

A limitation of liability provision in a sales contract between an electric utility company and a manufacturer of generator components, excluding indirect, special, incidental, and consequential damages for breach of warranty, was enforceable, where the disclaimer was a reasonable allocation of risk by commercially sophisticated parties and where the contract provided a "minimum adequate remedy" for breach of warranty, even though that remedy, in the circumstances, had failed of its essential purpose. [372-377]

A limitation of liability provision in a sales contract between an electric utility company and a manufacturer of generator components, excluding indirect, special, incidental, and consequential damages for breach of warranty, was enforceable to bar a claim for breach of warranty under the contract brought pursuant to G. L. c. 93A, § 11. [377-379]

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Mindy J. Spector* of New York, & *Edward P. Leibensperger* (*Jacqueline Prescott* of New York, & *James H. Cohen* with them) for the defendant.

*Sander A. Rikleen* (*Wendy B. Millman* of New York with him) for Canal Electric Company & others.

*Jeffrey N. Stevens*, for Boston Edison Company, was present but did not argue.

*John J. Kuzinevich & Ralph E. Loomis*, for New England Power Company, were present but did not argue.

ABRAMS, J. Pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), a judge of the United States District Court for the District of Massachusetts has certified to us two questions of Massachusetts law concerning consequential damages under Article 2 of the Uniform Commercial Code in circumstances in which a limited contractual remedy has failed of its essential purpose. See G. L. c. 106, § 2-719 (1988 ed.). The questions certified are: "1. Assuming that the Westinghouse exclusive remedy failed of its essential purpose, is the provision entitled Limitation of Liability enforceable under the circumstances alleged in this case? 2. Assuming that the provision entitled Limitation of Liability is enforceable even if the Westinghouse exclusive remedy failed of its essential purpose, is such provision enforceable so as to bar remedies against Westinghouse under Mass. G. L. c. 93A?" We answer both questions in the affirmative.

The plaintiffs are electric utility companies[1] that allege that they incurred substantial losses as a result of the failure of certain components of an electric generator manufactured by the defendant, Westinghouse Electric Corporation (Westinghouse). The record before us includes a statement of undisputed facts, an amended complaint and answer, and several other documents. For the reasons stated below, we answer the questions exclusively on the basis of the undisputed facts, which are substantially as follows.

---

[1]Canal Electric, one of the plaintiffs, is in contractual privity with Westinghouse. The other plaintiffs are Commonwealth Electric Company, Cambridge Electric Light Company, Montaup Electric Company, Boston Edison Company, Massachusetts Municipal Wholesale Electric Company, New England Power Company, and the Templeton Municipal Lighting Plant. They regularly purchase power from Canal. They seek damages for the cost of replacement power purchased during the time that Canal's turbine generator was out of service. Because the question was not certified to us, we do not decide whether plaintiffs not in privity may recover consequential damages or damages under G. L. c. 93A. See G. L. c. 106, § 2-318. We limit ourselves to answering only the questions certified. See *Cabot Corp.* v. *Baddour*, 394 Mass. 720 (1985). We refer only to Canal throughout our opinion.

In March, 1983, one of the plaintiffs, Canal Electric Company (Canal), purchased from Westinghouse a set of rotating blades for use in a steam turbine generator, and related services. Westinghouse shipped the blades to Canal on March 19, 1983, and installed them in the turbine generator.

The contract governing the sale was one of two Westinghouse selling policies, either Selling Policy 1701 or Selling Policy 1270. The parties are in disagreement concerning which selling policy governs the sale; however, the two selling policies are virtually indistinguishable for purposes of our answer to the certified questions. Both selling policies contained exclusive warranty provisions, exclusive (i.e., limited) repair or replacement remedies, and clauses limiting total liability to the contract or order price of the goods and related services. These "Limitation of Liability" clauses specifically excluded indirect, special, incidental, and consequential damages. Canal does not assert that the contract terms were unconscionable.

Westinghouse sent Canal an invoice for the price of the blades on April 19, 1983. During an inspection on July 20, 1983, cracks were discovered in one or more of the blades. On August 8, 1983, Westinghouse issued to Canal a full credit for the price of the blades that had failed. The turbine generator returned to service on November 21, 1983, with replacement blades designed, manufactured, and installed by Westinghouse.

The case comes to us after a hearing in Federal court on Westinghouse's motion for summary judgment. In addition to the statement of undisputed facts, the Federal judge has transmitted to us several other documents, including affidavits, exhibits, and an amended complaint, which in substance alleges wilful dilatoriness and repudiation of warranty obligations.

Because the certified questions come to us on the defendant's motion for summary judgment, Canal asserts that in our answers we should resolve all factual disputes in its favor. The questions were certified to us pursuant to S.J.C. rule 1:03, *supra*, which provides that a certification order

shall set forth "a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." *Id.* at § 3 (2). The record before us is not fully developed on issues raised by Canal, as required by our rule, and those issues raise factual disputes that are not resolved. Nevertheless, we conclude that we can answer the certified questions if we confine our answers to the undisputed facts. We add that if, in the future, the "questions certified to us . . . are not accompanied by sufficient nonhypothetical, evidentiary facts to allow us to adequately determine" the answers, we may decline to answer such questions. See *Schlieter* v. *Carlos,* 775 P.2d 709, 711 (N.M. 1989). In this case, we confine our answers to the undisputed facts.

1. *Question One.* "Assuming that the Westinghouse exclusive remedy failed of its essential purpose, is the provision entitled Limitation of Liability enforceable under the circumstances alleged in this case?" We answer that the exclusion of consequential damages is enforceable on the undisputed facts.

Canal contends that, because the limited repair or replacement remedy failed of its essential purpose (an assumption all parties make for purposes of the certified question),[2] it is entitled to all the remedies for breach provided in the Uniform Commercial Code that would otherwise be excluded by the "Limitation of Liability" clauses of the selling policies, including consequential damages. Canal relies on G. L. c. 106, § 2-719 (2), which provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter [i.e., the Code]."

---

[2] In its brief, Westinghouse "contends that it fully performed its warranty obligations by repairing the blades and returning the turbine to service. . . . [S]olely for the purposes of this appeal, Westinghouse assumes the repair/replacement remedy failed of its essential purpose."

Because Westinghouse confines its argument to the issue of consequential damages, we assume that Westinghouse does not argue that nonconsequential Code damages are not recoverable.

Westinghouse, on the other hand, argues that Canal is barred from recovering consequential damages despite the failure of the limited remedy, relying on G. L. c. 106, § 2-719 (3), which provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Westinghouse asserts that the consequential damages disclaimer survives the failure of the limited remedy, because it is not unconscionable. Westinghouse argues that, even if Canal is entitled to direct and incidental damages, the disclaimer of consequential damages must stand because it is an entirely separate contractual provision from the limited remedy clause.

Nothing in § 2-719 or other provisions of the Code explains whether consequential damages may be recovered following the failure of a limited remedy if they are expressly excluded by a contract, as they are in this case. The tension between the two subsections of § 2-719 may be resolved by examining the purposes of the section as set forth in the Official Comment to § 2-719 of the Uniform Commercial Code, 1B U.L.A. (Master ed. 1989). Comment 1 notes that "[u]nder this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." The comment continues: "However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article, they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract." Thus, § 2-719 was "intended to encourage and facilitate consensual allocations of risks associated with the sale of goods," as long as minimum adequate remedies are available to a party injured by a breach. *V-M Corp.* v. *Barnard Distrib. Co.*, 447 F.2d 864, 869 (7th Cir. 1971). Cf. *Board of Directors of Harriman School Dist.* v. *Southwestern Petroleum Corp.*, 757 S.W.2d 669 (Tenn. App. 1988) (consequential damages disclaimer unenforceable when no minimum adequate remedy available).

Previously we noted that the consensual allocation of risk is not contrary to public policy. *Minassian* v. *Ogden Suffolk Downs, Inc.*, 400 Mass. 490, 493 (1987). Recently, we enforced a contract clause excluding the recovery of consequential damages even when those damages exceeded the total contract price, as Canal alleges they do in this case. See *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118 (1986). "Limiting damages to a refund of the purchase price in the circumstances of this case, where the two parties are sophisticated business entities, and where consequential damages in the event of a problem could be extensive, is a reasonable business practice . . . ." *Id.* at 124. Like the contractual provisions in *Deerskin Trading Post*, the consequential damages disclaimer in the Canal-Westinghouse contract was a reasonable accommodation between two commercially sophisticated parties. See *American Elec. Power Co.* v. *Westinghouse Elec. Corp.*, 418 F. Supp. 435, 458 (S.D.N.Y. 1976) ("the contract here in issue is not of the type entered into by the average consumer, but a commercial agreement painstakingly negotiated between industrial giants"). See also *Employers Ins. of Wausau* v. *Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 780 (5th Cir.), cert. denied sub nom. *Employers Ins. of Wausau* v. *Avondale Shipyards, Inc.*, 110 S. Ct. 77 (1989).

Here, Canal's assent to the Westinghouse selling policies demonstrates a clear intent to accept the risk of consequential damages. The particular allocation of risk in the Westinghouse selling policies is one that has been recognized as common in the electric power generation industry. See, e.g., *Public Serv. Co. of New Hampshire* v. *Westinghouse Elec. Corp.*, 685 F. Supp. 1281, 1289 (D. N.H. 1988). "Most utilities agree that manufacturers should not be expected to take [the risk of consequential damages] since they do not have any direct control over the magnitude of expense." *Ebasco Servs., Inc.* v. *Pennsylvania Power & Light Co.*, 460 F. Supp. 163, 181 (E.D. Pa. 1978). There is no reason to disturb an agreed-on allocation of risk that is standard in an industry simply because the agreement has proved expensive

to one of the parties. See *Employers Ins. of Wausau, supra* at 780.

Moreover, under § 2-719 (2), Canal may recover any non-consequential Code damages, despite the "Limitation of Liability" provision. It is undisputed that Westinghouse already has issued to Canal a credit for the full purchase price of the faulty blades. This, and any other non-consequential damages under the Code, is a "minimum adequate remedy." See § 2-719, comment 1.

Accordingly, on the limited facts before us, we conclude that the disclaimer of consequential damages is enforceable even though the limited repair or replacement remedy has failed of its essential purpose. The disclaimer of consequential damages is an entirely separate contractual provision from the limited repair or replacement remedy and thus survives the failure of the limited remedy. "The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. . . . The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable." (Citations omitted.) *Chatlos Syss.* v. *National Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir. 1980). On the undisputed facts before us, then, we answer the first question affirmatively.

In so ruling, we follow the principle that "the agreed-upon allocation of commercial risk should not be disturbed . . . where . . . the warranted item is a highly complex, sophisticated, and in some ways experimental piece of equipment." *American Elec. Power, supra* at 458. Recent cases, particularly ones involving contracts among sophisticated commercial entities like the parties in this case, generally follow this rule,[3] although there is some disagreement among the

---

[3]See, e.g., *Employers Ins. of Wausau* v. *Suwannee River Spa Lines, Inc.*, 866 F.2d 752 (5th Cir. 1989); *Lewis Refrigeration Co.* v. *Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427 (6th Cir. 1983); *Chatlos Syss.* v. *National Cash Register Corp.*, 635 F.2d 1081 (3d Cir. 1980); *S.M. Wilson & Co.* v. *Smith Int'l, Inc.*, 587 F.2d 1363 (9th Cir. 1978); *McKernan* v. *United Technologies Corp.*, 717 F. Supp. 60 (D. Conn.

courts.[4] Cases awarding consequential damages generally arise from consumer transactions and involve "relatively uncomplicated products" like cars and tractors.[5] Those facts are not present in this case.

We add that consequential damages are awarded in cases in which the facts show wilful dilatoriness or repudiation of warranty obligations by the seller.[6] Although in its brief Ca-

1989); *Smith v. Navistar Int'l Transp. Corp.*, 714 F. Supp. 303 (N.D. Ill. 1989); *Harper Tax Servs., Inc. v. Quick Tax Ltd.*, 686 F. Supp. 109 (D. Md. 1988); *Flow Indus., Inc. v. Fields Constr. Co.*, 683 F. Supp. 527 (D. Md. 1988); *Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 678 F. Supp. 208 (C.D. Ill. 1988); *Computerized Radiological Servs. v. Syntex Corp.*, 595 F. Supp. 1495 (E.D.N.Y. 1984), aff'd in part, rev'd in part on other grounds, 786 F.2d 72 (2d Cir. 1986); *American Elec. Power Co., supra*; *County Asphalt, Inc. v. Lewis Welding & Eng'g Corp.*, 323 F. Supp. 1300 (S.D.N.Y. 1970), cert. denied, 404 U.S. 939 (1971); *Carboline v. Oxmoor Center*, 40 U.C.C. Reptr. 1728 (Ky. App. 1985); *Xerox Corp. v. Hawkes*, 124 N.H. 610 (1984); *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584 (1987); *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5 (N.Y. 1983); *Stutts v. Green Ford, Inc.*, 267 S.E.2d 919 (N.C. App. 1980); *Envirotech Corp. v. Halco Eng'g, Inc.*, 234 Va. 503 (1988).

[4]See *Fidelity & Deposit Co. of Md. v. Krebs Eng'rs*, 859 F.2d 501 (7th Cir. 1988); *R.W. Murray, Co. v. Shatterproof Glass Corp.*, 758 F.2d 266 (8th Cir. 1985); *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364 (E.D. Mich. 1977); *Directors of Harriman School Dist. v. Southwestern Petroleum Corp.*, 757 S.W.2d 669 (Tenn. App. 1988).

[5]See *Massey-Ferguson, Inc. v. Laird*, 432 So.2d 1259 (Ala. 1983); *Caterpillar Tractor Co. v. Waterson*, 13 Ark. App. 77 (1984); *Clark v. International Harvester Co.*, 99 Idaho 326 (1978); *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388 (1970); *Goddard v. General Motors Corp.*, 60 Ohio St. 2d 41 (1979); *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406 (1978).

[6]See, e.g., *Fiorito Bros. v. Fruehauf Corp.*, 747 F.2d 1309 (9th Cir. 1984); *Soo Line R.R. v. Fruehauf Corp.*, 547 F.2d 1365 (8th Cir. 1977); *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F. Supp. 39 (N.D. Ill. 1970); *Leprino v. Intermountain Brick Co.*, 759 P.2d 835 (Colo. App. 1988); *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388 (1970).

Many of the courts following the rule that consequential damages may be excluded even when a limited remedy has failed of its essential purpose have indicated that they might hold otherwise if bad faith or wilful dilatoriness could be shown. See, e.g., *Chatlos Syss. v. National Cash Register Corp.*, 635 F.2d 1081, 1087 (3d Cir. 1980) ("This is not a case where the seller acted unreasonably or in bad faith"); *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978) ("The seller . . . did not ignore his obligation to repair; he simply was unable to perform it"); *Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 678 F. Supp. 208, 212 (C.D. Ill.

nal argues wilful dilatoriness and repudiation, those facts are in dispute and thus are not properly before us.[7] See *Schlieter* v. *Carlos*, 775 P.2d 709 (N.M. 1989). Our answer might well be different if such facts were established.

2. *Question Two.* "Assuming that the provision entitled Limitation of Liability is enforceable even if the Westinghouse exclusive remedy failed of its essèntial purpose, is such provision enforceable so as to bar remedies against Westinghouse under Mass. G.L. c.93A?"[8] We answer that it is, in the circumstances of this case.

Once the limited remedy failed of its essential purpose, Canal was entitled to all Code remedies for breach of warranty other than consequential damages. The question is whether Canal could validly waive its c. 93A, § 11, claim by assenting to the Limitation of Liability clause. We conclude that it could.[9]

A statutory right or remedy may be waived when the waiver would not frustrate the public policies of the statute. For example, in *Continental Corp.* v. *Gowdy*, 283 Mass. 204

---

1988) (buyer failed to allege that seller was "wilful or dilatory in failing to meet its warranty obligations"); *Kearney & Trecker Corp.* v. *Master Engraving Co., supra; Cayuga Harvester, Inc.* v. *Allis-Chalmers Corp., supra.*

[7]The parties also have used the term "bad faith" in their briefs. The cases on this issue generally refer to wilful dilatoriness or repudiation, not to bad faith.

[8]Selling Policy 1270 provides, in part: "Purchaser expressly agrees that the remedies provided therein are exclusive and that neither Westinghouse nor its suppliers will under any circumstances be liable *under any theory of recovery*, whether based on contract; on negligence of any kind, strict liability or tort . . . *or otherwise* . . . ." (Emphasis added.) Selling Policy 1701 provides, in part: "Westinghouse . . . shall not be liable in contract, in tort (including negligence), strict liability *or otherwise* . . . ." (Emphasis added.)

[9]We note that the Federal District Court for the District of Massachusetts has issued conflicting holdings on this issue. Compare *Chestnut Hill Dev. Corp.* v. *Otis Elevator Co.*, 653 F. Supp. 927 (D. Mass. 1987) (claim under c. 93A, § 11, waived by contract) with *North Am. Consol., Inc.* v. *Kopka*, 644 F. Supp. 191, 195 (D. Mass. 1986) ("it may be that the rule most protective of the public . . . would be the rule that claims of unfair and deceptive practices may never be prospectively waived by contract").

(1933), we stated that a contractual waiver of statutory rights is permissible when the statute's purpose is the "protection of the property rights of individual parties . . . rather than . . . the protection of the general public." *Id.* at 218. Cf. *Minassian, supra* at 493; *Lee* v. *Allied Sports Assocs.*, 349 Mass. 544, 550 (1965).

A statutory right may not be disclaimed if the waiver could "do violence to the public policy underlying the legislative enactment." *Spence* v. *Reeder*, 382 Mass. 398, 413 (1981). See *Henry* v. *Mansfield Beauty Academy, Inc.*, 353 Mass. 507 (1968). Thus, we ordinarily would not effectuate a *consumer's* waiver of rights under c. 93A. Compare *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813 (1982) (consumer not required to submit to arbitration before proceeding on c. 93A claim), with *Greenleaf Eng'g & Constr. Co.* v. *Teradyne, Inc.*, 15 Mass. App. Ct. 571 (1983) (stay of proceedings under c. 93A, § 11, pending arbitration proper when business plaintiff's c. 93A claim was essentially a private dispute arising from commercial transaction). Although there might be certain c. 93A, § 11, claims that a business plaintiff could not waive, such as a claim sounding in antitrust, facts to establish such a claim have not been alleged or established.

This dispute is essentially a private one in which Canal's c. 93A, § 11, claim is duplicative of its breach of warranty claim. General Laws c. 93A "is not subject to the traditional limitations of preexisting causes of action," *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975), but in some circumstances a c. 93A claim may be merely duplicative of a traditional contract claim. In *Linthicum* v. *Archambault*, 379 Mass. 381, 387 (1979), we noted that a business plaintiff could recover for "a material and substantial breach of warranty" under c. 93A, § 11. At the same time, we made clear that the c. 93A, § 11, claim was duplicative of the breach of warranty claim, because we permitted recovery only of ac-

tual damages, combined with attorneys' fees.[10] *Id.* at 388. See *McGrath* v. *Mishara*, 386 Mass. 74, 85 (1982) ("We see no reason to believe that the Legislature intended in c. 93A to authorize cumulative damages . . . for the same wrong"). Cf. *Simon* v. *Solomon*, 385 Mass. 91 (1982).

In this case, as in *Linthicum*, the c. 93A, § 11, claim arises from the breach of warranty and merely is an alternate theory of recovery under the contract. Moreover, the dispute is a purely commercial one that does not affect the public interest. See *Chestnut Hill Dev. Corp.* v. *Otis Elevator Co.*, 653 F. Supp. 927 (D. Mass. 1987) (consequential damages disclaimer in contract barred recovery under c. 93A, § 11). See also *Greenleaf Eng'g & Constr. Co.*, *supra* at 576; *Flower World of Am., Inc.* v. *Wenzel*, 122 Ariz. 319 (Ct. App. 1978). Nothing suggests that, in these circumstances, the waiver of the c. 93A, § 11, claim would frustrate the public policies of the statute. Thus, we conclude on the limited facts before us that the Limitation of Liability provisions require an affirmative answer to the second question.

Based on the undisputed facts, we answer both certified questions, "yes."

---

[10]Chapter 93A authorizes the award of attorneys' fees as well as actual damages. Thus, a plaintiff suing both for breach of warranty and under c. 93A would be entitled, if successful, to actual damages plus attorneys' fees, but not to double recovery plus fees. See *Linthicum, supra* at 388. In circumstances of knowing and wilful violation of c. 93A or of bad-faith refusal to settle, a plaintiff also may be entitled to double or treble damages under c. 93A itself. See *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983) (distinguishing between "relatively innocent" violators of c. 93A, who are not liable for multiple damages and wilful or knowing violators who are liable for multiple damages).