**WINTER PANEL CORP., Plaintiff,**

v.

**REICHHOLD CHEMICALS, INC., Defendant.**

**Civ. A. No. 85–3616WF.**

United States District Court, D. Massachusetts.

April 7, 1993.

44. *Id.*

Robert J. Baum, Bradley, Barry & Tarlow, Edward R. Wiest, Tarlow, Breed, Hart, Murphy & Rodgers, Boston, MA, for plaintiff.

Harvey J. Wolkoff and Paul K. Stecker, Ropes & Gray, Boston, MA, for defendant.

## MEMORANDUM & ORDER

WOLF, District Judge.

### I. INTRODUCTION

Plaintiff, Winter Panel Corp ("Winter Panel") alleges breach of contract, breach of warranty, and misrepresentation in violation of Mass.Gen.L. ch. 93A, against defendant Reichhold Chemicals, Inc. ("Reichhold"), arising out of a contract for the supply of chemicals for the production of insulated construction panels. Plaintiff seeks judgment in the amount of $5,000,000 for damages including plaintiff's repair and replacement costs associated with defective panels, and for loss of good will and business reputation. Defendant has counterclaimed for payment of three outstanding invoices.

Before the court is defendant's renewed motion for summary judgment. Defendant had filed previously for summary judgment, which motion was denied in part and granted in part in an Order dated January 14, 1991. The court granted defendant's motion for summary judgment on plaintiff's claim

sounding in negligence; summary judgment was denied without prejudice with regard to the remaining counts. The defendant now moves that the court dismiss the counts which survived the January 14, 1991 Order.

Numerous memoranda have been submitted by the parties pursuant to defendant's summary judgment motions. However, in light of the analysis in a recent case in this district, *Glyptal, Inc. v. Engelhard Corp.*, 801 F.Supp. 887 (D.Mass.1992), which this court finds persuasive, the parties will be granted an opportunity to supplement the factual record of this case prior to resolution of defendant's motion.[1] Specifically, the parties shall have six weeks from the date of this memorandum to seek additional discovery and make additional filings to this court as explained below.

### II. RELEVANT FACTS

Plaintiff, Winter Panel, formerly Nielsen Winter Corp., manufactures insulated construction panels. Winter Panel is incorporated in New Hampshire and its usual place of business is West Groton, Massachusetts. Reichhold is a foreign corporation whose research and manufacturing facilities were located in New York and New Jersey throughout the period relevant to this dispute.

Winter Panel was founded in 1981 by Amos Winter for the purpose of manufacturing foam-insulated construction panels for sale in New England. The panels were to be produced by spraying polyurethane foam between two skins, and letting the foam harden and adhere to the skins. Deposition of Walter Coutu at 12–14 (appended to Renewal of Defendant's Motion for Summary Judgment; Deposition of Amos Winter at 134–137 (appended to Affidavit of Robert Baum at exh. 1). Plaintiff's principals had some experience in the industry prior to founding the company, but were not fully familiar with either the equipment or the chemicals involved in the manufacturing process they intended to pursue. Winter Dep. at 107, 137–138; Deposition of Stewart Wood, at 42, 71 (appended to Baum Aff. at ex. 3).

---

1. The court will also allow the parties the opportunity to address certain legal issues which it

finds were not adequately briefed in the papers received thus far.

In the fall of 1981, plaintiff's chief officer, Amos Winter, was approached by Gerhard Regenauer, an employee of Reichhold, who had previously learned of plaintiff's business plans. Winter Dep. at 106. Reichhold was engaged in polyurethane chemicals production, and Regenauer indicated to Winter that Reichhold could supply a polyurethane foam system to be used in Winter Panel's production process. *Id.* at 107, 138–139. Defendant subsequently undertook to develop a chemical foam system that would serve plaintiff's needs. Deposition of Lawrence Loh at 53–54 (appended to Baum Aff. at exh. 2); Wood Dep. at 56. The precise composition of the chemical foam system was altered at times during the development of the product. Deposition of Dorey Lum at 102–105 (appended to Supplemental Affidavit of Robert Baum at exh. B). Plaintiff claims that throughout the course of dealing between the parties, defendant's representatives assured Winter Panel that they could supply a foam system that would meet plaintiff's needs and specifications. Winter Dep. at 107, 138–139; Wood Dep. at 42–43; Affidavit of Amos Winter (# 41) at ¶ 3.

Defendants made their first deliveries of chemicals to plaintiff on December 8 and December 11, 1981, pursuant to a written purchase order received by Reichhold on December 2, 1981. Affidavit of John Sullivan at ¶ 3. Invoices for these shipments were mailed on December 8, 1981 and January 4, 1982. Defendant also sent plaintiff a technical bulletin describing various qualities of the chemical product. Affidavit of Amos Winter at ¶ 2. Winter Panel admits to having received at least one technical bulletin in June 1982, before production commenced. *Id.* Defendants made nine other shipments to plaintiff between June 1982 and January 1983, all pursuant to written or oral purchase orders. Sullivan Aff. at ¶ 4. Invoices for these shipments were mailed to plaintiff on the same day each order of chemicals was shipped. At this time, however, it is unclear whether the invoices were received by Winter Panel prior to or after the arrival of the shipments. All invoices but the last three were paid. *Id.* at ¶ 5.

Winter Panel's purchase orders made no mention of seller's liability for breach of warranty. *Id.* at exh. A–1. Reichhold's invoices, however, did contain terms purporting to limit its warranty obligations and its liability in the event of breach. On the bottom of each invoice in small letters appeared the words, "See the reverse side for Seller's Standard Terms and Conditions which include a disclaimer of all warranties, express or implied including the warranty of merchantability." On the reverse, under the bold and capitalized heading, "STANDARD TERMS AND CONDITIONS," the following appeared in small type, among other writing:

> Buyer further shall determine within thirty (30) days after receipt of each shipment by testing and all other means the suitability of Seller's materials for Buyer's particular purpose or purposes, regardless of whether disclosed to any Seller's representatives. The sole remedy of Buyer for materials not meeting Seller's standard written specifications shall be replacement by Seller of a like amount of material after reasonable opportunity to investigate Buyer's claim. THE WARRANTY CONTAINED IN THIS PARAGRAPH IS PROVIDED IN PLACE OF ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY. Seller shall not be liable for consequential or special damages. Buyer agrees that it will not rely upon, and Seller does not authorize, any representations, warranties or agreements made by any of Seller's representatives, except as set forth herein and in Seller's written specifications. In this connection, Buyer acknowledges that Seller's advertising material is intended only to present brief summary descriptions of Seller's materials for potential buyers and is not intended to substitute for testing of such materials and compliance with Seller's written specifications. Further, notwithstanding such technical consultation as may be furnished by Seller, Buyer agrees to hold Seller harmless against all liability resulting from Buyer's use or resale of such materials after processing or combination with other materials.

Sullivan Aff. at ex. A–2, B–2. Plaintiff never objected to this provision; nor did its purchase orders exclude the incorporation of additional contract terms through defendant's acknowledgement. *Id.* at ex. A–1, B–1, C–1; Winter Aff. at ¶ 3.

The technical bulletins describing the chemicals sent by Reichhold also contained a warranty and damages limitation clause, printed at the bottom of its first page in capital italic letters:

THE INFORMATION HEREIN IS TO ASSIST CUSTOMERS IN DETERMINING WHETHER OUR PRODUCTS ARE SUITABLE FOR THEIR APPLICATIONS. OUR PRODUCTS ARE INTENDED FOR SALE TO INDUSTRIAL AND COMMERCIAL CUSTOMERS. WE REQUEST THAT CUSTOMERS INSPECT AND TEST OUR PRODUCTS BEFORE USE AND SATISFY THEMSELVES AS TO CONTENTS AND SUITABILITY. WE WARRANT THAT OUR PRODUCTS WILL MEET OUR WRITTEN SPECIFICATIONS. NOTHING HEREIN SHALL CONSTITUTE ANY OTHER WARRANTY EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS, NOR IS PROTECTION FROM ANY LAW OR PATENT TO BE INFERRED. ALL PATENT RIGHTS ARE RESERVED. THE EXCLUSIVE REMEDY FOR ALL PROVEN CLAIMS IS REPLACEMENT OF OUR MATERIALS AND IN NO EVENT SHALL WE BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

Sullivan Aff. at exh. V. Plaintiff disputes that it received technical bulletins for each variation of the foam system shipped, but there is no dispute that it received invoices for each shipment of chemicals. Winter Aff. at ¶ 2; Plaintiff's Response to Defendant's Request for Admissions, (appended to Renewal of Defendant's Motion for Summary Judgment at ex. C.).

In June 1982 plaintiff conducted a test run of its manufacturing process, using the Reichhold foam components. Prior to this time, in May 1982, Gerhard Regenauer, the Reichhold employee who originally had been responsible for developing the chemical foam system for Winter Panel, resigned. Deposition of Gerhard Reichhold at 19 (appended to Baum Supp. Aff. at exh. A). After Regenauer abruptly departed, Lawrence Loh ("Loh") was called in to provide technical advice to Winter Panel and attended the trial run at Winter Panel's facility. Wood Dep. at 72; Loh Dep. at 53–67.

There is a factual dispute over what transpired at the trial run. Plaintiff alleges that Loh made statements assuring plaintiff that its process was functioning well, and that full production could get underway. Winter Dep. at 284; Wood Dep. at 71–72. Specifically, Amos Winter testified:

I asked [Loh] point blank if there was any reason why we couldn't sell the product, and he didn't see any reason not to sell the product. His comment was it was a good product.

*Id.* Loh testified that he did not recall advising Winter Panel that its product was ready for marketing. Loh Dep. at 70 (appended to Renewal of Defendant's Motion for Summary Judgment). Furthermore, Loh testified that if he had said anything he would not have recommended that the company go into production "because there was a lot of debugging to do." *Id.*[2] In an interoffice memorandum Loh stated the following regarding the Winter Panel account:

As I indicated to you, the trial run ran quite smoothly as far as foaming is concerned. At this time we anticipate an order from [Winter Panel] in the very near future.

Baum Aff. exh. 5. The encouraging statements allegedly made by Loh were offered despite the fact that Loh had no hands-on experience with two-part urethane foam systems, either in research or with respect to production methods. Loh had never viewed

---

2. As this statement does not appear to be based upon Loh's present memory of something he actually said, it probably does not constitute evidence which will be admissible at trial. However, because it does not materially affect the merits of the motion for summary judgment, it is included here in the interest of completeness.

a full-scale production run using the two-part foam system prior to viewing the trial run at Winter Panel. Loh Dep. at 67–68. Loh also had only limited conversations with Regenauer prior to his participation in the trial run at Winter Panel. *Id.* at 47–48; Regenauer Dep. at 111. Defendant also assured plaintiff that it was capable of continuing to develop Winter Panel's system, despite Regenauer's departure. Winter Dep. at 283. However, Regenauer's replacement, Dorey Lum ("Lum"), had limited experience with the production and formulation of the two-foam urethane systems such as the one used by Winter Panel. Deposition of Dorey Lum at 18–19, 27–28, 47–48, 70–71 (appended to Baum's Supp. Aff. at exh. B).

Plaintiff began selling its panels in July 1982. Plaintiff's Answers to Defendant's Second Set of Interrogatories at ¶ 2. In the fall of 1982, plaintiff's customers began to complain that the panels were warping due to shrinkage in the cold weather. Winter Dep. at 212, 344. Plaintiff eventually repaired or replaced the faulty panels, and claims to have spent at least $200,000 in the process. Plaintiff's Answers to Defendant's Second Set of Interrogatories at exh. 3. Defendant never reimbursed Winter Panel for these costs. Nor did defendant ever succeed in providing plaintiff with a foam system that did not warp in cold weather. Winter Dep. at 363–66.[3]

On September 30, 1985, plaintiff filed this suit alleging negligence, breach of contract, breach of warranty, and unfair trade practices in violation of Mass.Gen.L. ch. 93A. Plaintiff alleges that Reichhold's breaches caused the failure of a significant number of panels sold by Winter Panel, resulting in loss of reputation and good will and other damages, including the costs of repairing defective panels used by customers.

III. *ANALYSIS*

A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides that the court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In addition, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Trans. Corp.*, 722 F.2d 922, 928 (1st Cir.1983).

In deciding motions for summary judgment, the court must make two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely in dispute is material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Id.* To determine if the dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* The party opposing the motion must "provide the court with 'some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.'" *Arsenault v. Allegheny Airlines*, 485 F.Supp. 1373, 1378 (D.Mass.1980) (*quoting Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

B. *The Effect of Reichhold's Warranty and Damages Limitations Clauses*

Reichhold's sole contention supporting its summary judgment motion is that plaintiff's

---

**3.** Despite its alleged assurances of marketability, Defendant also proved unable to provide chemicals that would enable Winter Panel to manufacture insulating panels meeting Type II fire prevention standards, as required by building codes in localities where its product was to be sold. Wood Dep., Vol I, at 80–82, Vol II, at 77, 87–88. Plaintiff's claims for damages, however, do not relate to this shortcoming.

action to recover consequential and incidental damages is barred by the limitation of damages clause in Reichhold's technical bulletins and invoices. Under the Uniform Commercial Code (the "U.C.C."),[4] purchasers of goods may recover consequential damages resulting from the seller's breach, where those damages result from the buyer's particular requirements of which the seller had reason to know, or where injury to person or property is proximately caused by the breach of any warranty. U.C.C. §§ 2–714(3), 2–715(2); *see also Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209 (1st Cir.1991). Sellers of goods, however, may seek to include terms in their contract to disclaim liability for breaches of warranty, U.C.C. § 2–316, and to limit the remedies available to the buyer in the event of breach, by disclaiming liability for consequential damages. U.C.C. § 2–719.

■ Defendant argues that its warranty and damages limitation clauses became part of the contracts between the parties under U.C.C. § 2–207.[5] More specifically, Defendant relies in the alternative on subsections 2–207(1) and (2). Defendant's contention based on the former subsection arises out of the doctrine first enunciated by the Court of Appeals for the First Circuit in *Roto–Lith Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497 (1st Cir.1962). Under *Roto–Lith*, warranty and damages limitation clauses included in acknowledgements of purchase orders are incorporated into the final contract between two commercial parties where the purchaser subsequently accepts delivery of the goods. *Id.* at 500.

Plaintiff urges that this court not follow the oft-criticized *Roto–Lith* case. While the Supreme Judicial Court of Massachusetts has never adopted its tenets, however, *Roto–Lith* has been consistently followed by the federal courts in this circuit, and this court remains bound by its holdings. *See, e.g., Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.*, 445 F.Supp. 537 (D.Mass.1977); *Logan Equipment v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1195 (D.Mass.1990); *Alloy Computer Products, Inc. v. Northern Telecom, Inc.*, 683 F.Supp. 12, 14 (D.Mass.1988); *Glyptal*, 801 F.Supp. at 893; *Plymouth Rubber Co. v. Uniroyal, Inc.*, No. 89–175WF, 1992 WL 93223 at *10 (D.Mass. April 14, 1992) (all citing the rule in *Roto–Lith* as the law of the First Circuit). Hence, until the Supreme Judicial Court or the Court of Appeals for the First Circuit has occasion to reexamine the issue, battles of the forms under U.C.C. § 2–207(1) are controlled by the doctrines articulated in *Roto–Lith*.

Plaintiff, however, raises a factual issue which calls into question whether *Roto–Lith* applies to this case. Plaintiff argues, in a submission recently filed with the court, that a factual dispute exists regarding whether defendant's invoices were received by plaintiff prior to, or contemporaneous with, Reichhold's shipments of chemicals. Plaintiff argues that *Roto–Lith* should not govern a case where the acknowledgement was not received prior to the goods. In so arguing, plaintiff relies on the reasoning recently employed by the district court in *Glyptal*, 801 F.Supp. 887.

■ *Roto–Lith* left unanswered the question of whether a seller's warranty and damages limitations clauses would become part of the parties' contract where the seller's invoice was received *after* the goods. *Roto–Lith v. F.P. Bartlett & Co., Inc.*, 297 F.2d at 499, n. 3. In *Glyptal* the court held that in such circumstances, the terms in the seller's

4. The provisions of the U.C.C. discussed throughout this Memorandum & Order are codified at Mass.Gen.L. ch. 106 §§ 1–101, *et. seq.* (1990 and Supp.1992).

5. Mass.Gen.L. ch. 106 § 2–207 provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it;

(c) notification or objection to them has already been given or is given within a reasonable time after notice of them is received.

form does not become part of the contract between the parties, under U.C.C. § 2–207(1). This court agrees with the reasoning employed in *Glyptal.*

Under the U.C.C., a seller may accept an offer to supply goods by shipping the goods requested. U.C.C. § 2–206(1)(b). Once shipment is made, a contract between the parties is complete. *See* James White and Robert Summers, *Uniform Commercial Code* § 1–5 (3d ed. 1988 & Supp.1991). The buyer is at that point bound and must pay for the goods shipped according to the contract, or be in breach. *Id.; Michael Halebian N.J., Inc. v. Roppe Rubber Corp.,* 718 F.Supp. 348, 365 (D.N.J.1989); *F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515, 517, 30 UCC Rep.Serv. 1237 (R.I.1981); *Joseph Muller Corp., Zurich v. Commonwealth Petrochemicals,* 334 F.Supp. 1013, 1019 (S.D.N.Y.1971). Therefore, additional or different contract terms received after the contract is thus formed are not part of the contract under U.C.C. § 2–207, and must be considered proposals for additional terms. *Glyptal,* 801 F.Supp. at 894. Defendant's argument that *Roto–Lith* should apply because there is no dispute that the invoices were received before the plaintiff used or paid for the goods is unavailing under this analysis; once shipment of the goods, constituting acceptance of the offer of purchase, is made, the contract is complete. The effect of the defendant's limitations clauses must, therefore, be analyzed as mere proposals for additional terms to an already completed contract, if those terms did, in fact, arrive after the goods.

The present factual record on this issue, however, is inadequate. Plaintiff relies on the fact that defendants mailed their invoices on the same day they shipped their goods to argue that *Roto–Lith* is inapplicable to this

case.[6] This fact alone is insufficient to conclude that Winter Panel did not receive the invoices prior to, or contemporaneous with, receiving the goods. Since on its motion for summary judgment the defendant seeks to rely on the allegation that its damages limitation clause became part of the contract between that parties, the burden of proving the receipt of the invoices prior to the goods—or at least the burden of producing evidence tending to prove their receipt—logically should be placed on the defendant. In *Roto–Lith,* however, the court of appeals, after testimony at trial proved to be inconclusive, held that where an acknowledgement was mailed a day prior to shipment of the goods, there was an unrebutted presumption that the buyer received the acknowledgement prior to receiving the goods. 297 F.2d at 498. In light of this presumption in favor of receipt, which this court must apply to the analogous facts of this case in the absence of evidence to the contrary, the plaintiff must bring forward evidence sufficient at least to place in genuine dispute whether Winter Panel received Reichhold's invoices after it received each shipment of goods. The mere undisputed fact that the invoices were mailed on the same day that the goods were shipped is not adequate to avoid summary judgment on this issue, given the presumption established in *Roto–Lith.*

Because the significance of this issue has been illuminated by the reasoning of the recent *Glyptal* decision, and because this court finds that resolution of this factual question is central to determining whether to grant summary judgment in this case, the court will afford the parties an opportunity to take further discovery and to submit further affidavits to the court, to supplement the record on this issue.[7] *See* Fed.R.Civ.P. 56(f).

6. It is undisputed that the invoices concerning the first two shipments, made on December 8 and 11, 1981, were received by Winter Panel *after* the goods. *See* page 966, *supra.* It does not appear these goods were used to manufacture panels which were sold and distributed. The parties address their arguments to the goods purchased by Winter Panel after the June 1982 test, and the court addresses only those arguments.

7. In one of the many briefs it filed in support of its motion for summary judgment, Defendant's own attorneys stated that this case is factually distinct from *Roto–Lith* because "Winter Panel received Reichhold's invoices for each shipment *shortly after* it received the goods, ... " *Memorandum in Support of Defendant's Motion for Summary Judgment* (June 12, 1987) at 11 (emphasis added). However, defendant now argues that the plaintiff can point to no assertion of fact supported by affidavit that it received the invoic-

■ The court's decision to allow further discovery, to better reveal the temporal order in which defendant's goods and invoices were received by plaintiff, is based in part on a rejection of defendant's alternative contention that even if its damages limitation clause did not become part of the parties' agreement under *Roto–Lith*, it became incorporated into the contract pursuant to U.C.C. § 2–207(2).

Under U.C.C. § 2–207(2), proposals for additional terms to a contract become part of the agreement if there has been no objection by the buyer, and if they do not materially alter the existing terms. *See* Footnote 2, *supra*. Defendant argues that damages limitations clauses do not constitute material alterations in contracts between commercial entities. Defendant contends further that this is particularly so here, where the course of dealing between the parties occurred over a period of thirteen months, involving eleven different shipments.

■ Courts have disagreed over whether a proposed contract clause limiting a buyer's remedies is a material alteration under U.C.C. § 2–207(2). *Compare Kathenes v. Quick Chek Food Stores*, 596 F.Supp. 713 (D.N.J.1984) (holding that clause limiting consequential damages was not a material alteration, and thus binding) *with, e.g., Dale R. Horning Co. v. Falconer Glass Industries*, 730 F.Supp. 962 (S.D.Ind.1990) (holding, after thorough review of the cases on point, that clause limiting consequential damages was a material alteration, and therefore did not become part of the contract under U.C.C. § 2–207(2)). The prevailing trend, however, is to find that damages limitation provisions are material alterations. *See Glyptal*, 801 F.Supp. at 894. *See also, Step–Saver Data Sys., Inc. v. Wyse Technology*, 939 F.2d 91, 105 (3rd Cir.1991); *Valtrol, Inc. v. General Connectors Corp.*, 884 F.2d 149 (4th Cir. 1989); *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765 (10th Cir.1983); *Bergquist Co. v. Sunroc Corp.*, 777 F.Supp. 1236, 1248 (E.D.Pa.1991); *Westinghouse Electric Corp. v. Nielsons, Inc.*, 647 F.Supp.

896, 900 (D.Colo.1986) (all holding that remedy limitations clauses are material alterations of a contract otherwise not addressing availability of consequential damages). This court agrees with these recent cases which reason that damages limitations clauses are too potentially burdensome not to be considered material. Where consequential damages would otherwise be available to a buyer under U.C.C. § 2–715, a damages limitations clause shifts the commercial risks of substantial economic loss to the buyer. While such allocations of risk are common in commercial dealings, and expressly allowed under U.C.C. § 2–719, they must be considered significant terms in any contract, which would result in surprise or potential hardship if incorporated without express awareness by the buyer. *See* U.C.C. § 2–207, official comment 4. Therefore, damages limitation clauses are "material alterations" under U.C.C. § 2–207(2). *See Dale R. Horning Co. v. Falconer Glass Industries*, 730 F.Supp. at 967.

■ Defendant urges that even if a damages limitations clause generally is considered a material alteration, in this case the court should find that the clause did become part of the parties' contracts because they shared a thirteen month course of dealing, involving eleven different shipments of chemicals, each accompanied by an invoice spelling out defendant's damages limitation language. Defendant argues that this course of dealing precludes any argument that its damages limitation clauses worked any unfair surprise. In support of this proposition, Defendant adverts to two cases in which courts found that among commercial entities, a course of dealing which developed *prior to the transaction giving rise to the dispute* served to put a buyer on notice of terms found in the seller's written confirmation. *Schulze and Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 714 (7th Cir.1987); *Mid–South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1123 (5th Cir.1985). Based on such finding, the courts held that terms found in the written confirmations became part of the parties' contract under U.C.C. §§ 2–207, and 2–208 since the

es after the goods. Defendant's letter to the court dated November 9, 1992. Given this discrepancy, plaintiff at least is entitled to a reason-

able opportunity to seek factual support for its argument, in light of the reasoning employed in *Glyptal*.

seller could not complain of unfair surprise. *Id.*

Defendant's reliance on these cases, however, is misplaced. In contrast to *Schulze* and *Shoney's*, in the present case it is the entirety of the parties' course of conduct which gives rise to the dispute. Plaintiff does not complain about the last, or any particular, transaction occurring between parties who have enjoyed a prior history of harmonious dealings. Here, the plaintiff's allegations of harm stem from every shipment of chemicals sent by the defendant. Indeed, the plaintiff alleges that the defendant never supplied a batch of chemicals that suited its needs, Winter Dep. at 364–366, and thus far neither party has attempted to identify which particular shipments of chemicals caused the damages for which Winter Panel now seeks redress. In short, the entire course of dealing between the parties is at issue, and the defendant cannot point to a prior, established course of conduct which would have created shared expectations of the terms that would govern their contracts. *See Step–Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91, 103–104 (3rd Cir. 1991) (refusing to uphold warranty limitation clause based on course of dealing, where neither party had previously taken any action respecting the clause); *Trans–Aire Int'l, Inc. v. Northern Adhesive Co.,* 882 F.2d 1254, 1262 n. 9 (7th Cir.1989) (noting, in *dicta,* that the *Schulze* course of dealing analysis may be inapplicable to cases where the dispute involves all transactions between the parties, rather than a part of an otherwise successful business relationship).

In addition, as discussed earlier, the plaintiff now contends that in each transaction, defendant's invoices were received after the goods. If that contention is true, under the *Glyptal* analysis, none of the parties' contracts included the defendant's remedy limitations clauses. In that case, the plaintiff would be entitled to rely on the parties' course of dealing to contend that it never assented to a remedy limitations clause, either expressly or by operation of U.C.C. § 2–207(1). Defendant cannot, therefore, rely on a prior history of dealing between the parties to argue that its damages limitations clause should not be considered a material alteration of the understanding between the parties.

Moreover, neither *Schulze* nor *Shoney's* involved clauses purporting to deny the plaintiff a measure of damages to which it otherwise would be entitled under the U.C.C. *Schulze* involved a arbitration clause, while *Shoney's* related to a provision for interest and collection fees in the event of default under the contract. Neither provision is as significant as a clause purporting to shift the risk of substantial economic harm from seller to buyer. In fact, in *Trans–Aire,* 882 F.2d 1254, a case which involved a warranty clause, the Seventh Circuit refused to apply the reasoning of its *Schulze* decision. In that case, the court pointed out that the question of whether an additional term materially alters the parties' contract under § 2–207 is not answered solely by a finding the term would not result in unfair surprise. Rather, a term becomes a material alteration to the contract if it would "result in surprise *or hardship* if incorporated without the express awareness" of the nonassenting party. U.C.C. § 2–207 comment 4 (emphasis added); *Trans–Aire,* 882 F.2d at 1261.

The Seventh Circuit contrasted the arbitration clause at issue in *Schulze* with an indemnification clause which would have shifted the risk of economic loss from buyer to seller. The court found, despite a course of dealing involving twelve separate shipments, that such a clause did not become part of the parties' contract under § 2–207 because of the possibility that the clause would result in severe economic hardship on the seller. *Id.* at 1262–63. The court stated: "Clearly, a shift in legal liability which has the effect of relieving one party of the potential for economic hardship and placing this burden upon another party is an important term in any contract." *Id.* at 1263.

This court finds the reasoning of *Trans–Aire* to be convincing in the present case. Even if a course of dealing eliminates the danger of unfair surprise to the nonassenting party, a clause purporting to limit a party's liability under the U.C.C. constitutes a material alteration to a pre-existing contract because it may result in substantial economic

hardship if incorporated without the express awareness by the other party. *Id.* at 1263; *see also Diamond Fruit Growers, Inc. v. Krack Corp.,* 794 F.2d 1440 (9th Cir.1986) (refusing to incorporate a liability limitation clause despite consistent ten-year course of dealing between the parties during which the subject of seller's limitation clauses were discussed but never expressly assented-to or rejected).

For these reasons, the court finds that Defendant's damages limitation clauses did not become incorporated into its contracts with Winter Panel by virtue of a course of dealing under U.C.C. § 2–207(2). Defendant's ability to invoke those clauses, therefore, depends on the outcome of the *Roto–Lith* analysis discussed earlier.

Also implicated in this court's decision is a rejection of plaintiff's contentions that the damages limitation clauses at issue were unconscionable and/or inconspicuously displayed on defendant's written forms. Both issues are matters of law to be determined by the court. *See Zapatha v. Dairy Mart, Inc.,* 381 Mass. 284, 291, 408 N.E.2d 1370 (1980) (unconscionability); *Hunt v. Perkins Machinery Co.,* 352 Mass. 535, 226 N.E.2d 228 (1967) (conspicuousness).

■ More specifically, the court finds that the damages limitation clause is not unconscionable, as it is a reasonable allocation of risk between two commercial entities. *See Boston Helicopter Charter v. Agusta Aviation,* 767 F.Supp. 363, 374–75 (D.Mass.1991); *Logan Equipment Corp. v. Simon Aerials, Inc.,* 736 F.Supp. 1188 (D.Mass.1990). *See also Canal Electric Co. v. Westinghouse Electric Corp.,* 406 Mass. 369, 374–75, 548 N.E.2d 182 (1990) (holding that clause limited consequential damages remains a valid accommodation between two commercially sophisticated parties even where it fails of its essential purpose). Particularly here, where the product at issue was a complex, sophisticated, and at the time experimental substance, it was permissible and appropriate for commercial entities to allocate the risks of potential failure. *See Canal Elec. Co. v. Westinghouse Elec. Corp.,* 756 F.Supp. 620, 626 (D.Mass.1990).

■ The court also finds that the warranty and damages limitations clauses were not so inconspicuous that a reasonable business person would fail to notice them. *See Logan,* 736 F.Supp. at 1197. While the clauses on the invoices, upon which the defendant principally relies, appear on the back, a clearly written sentence on the front of the invoices advises the buyer to "See the reverse side for Seller's Standard Terms and Conditions which include a disclaimer of all warranties, expressed or implied, including warranty of merchantability." Sullivan Aff., exh. A–2, B–2. The reverse is labeled with the bold and capitalized heading "STANDARD TERMS AND CONDITIONS." *Id.* Moreover, the paragraph setting forth the remedy and damages limitation clauses contains a sentence in all capital letters stating that the paragraph's terms replace all warranties, express or implied. *Id.* Thus, the reasonable business person should have been aware of the existence of the damages and warranty limitation clauses. *See Logan,* 736 F.Supp. at 1197.

The court's view on this matter is reinforced by the fact that the limitations clauses also appeared in a more conspicuous fashion on the technical bulletins sent by Reichhold to Winter Panel. At the bottom of the technical bulletin, Reichhold inscribes its damages and warranty limitations clauses in fully capitalized, italic letters. Sullivan Aff., exh. V. Winter Panel admits to having received at least one technical bulletin in June 1982. Winter Aff. ¶ 2. Given that the purported contract language appears in such a conspicuous manner in the technical bulletin, the court finds that a reasonable business person should have been alerted to the existence of the defendant's limited warranty and damages provisions.

In light of the findings discussed earlier, the question of whether the defendant's invoices were received prior to, or contemporaneous with, the receipt of the shipped goods determines the outcome of the defendant's motion for summary judgment, at least with regard to plaintiff's claims for consequential damages arising out of breach of warranty. If the invoices were received no later than the goods, then the damages limitations

clauses, which are neither unconscionable nor inconspicuous, must be considered part of the parties' contracts and will act as a bar on plaintiff's claims for consequential damages. If, on the other hand, the mails were slower than defendant's shipping methods, then defendant's clauses cannot be considered part of the bargain, and the plaintiff is free to seek recovery for breach of express and implied warranties, to the full extent allowed under the U.C.C.

### C. Plaintiff's Misrepresentation Claim under Mass.Gen.L. ch. 93A

■ Regardless of whether defendant is entitled to summary judgment on plaintiff's breach of warranty claims, the court must decide whether to afford the plaintiff a trial on its misrepresentation claims under Mass. Gen.L. ch. 93A. Plaintiff claims that Reichhold made various false statements about its ability to supply Winter Panel with chemicals that would suit its manufacturing needs. Complaint ¶ 37. In particular, plaintiff complains that Reichhold misrepresented itself by stating that it had the expertise and experience to design and supply the requested foam products, and continued to do so even after Reichhold lost several key employees.

Defendant's motion for summary judgment on plaintiff's chapter 93A claims is based, once again, on its warranty and damages limitations clauses found in its invoices and technical bulletins. Defendant argues that if its clauses are found to be valid and binding on the parties, they serve to bar plaintiff from seeking recovery on their chapter 93A claims. In *Canal Electric v. Westinghouse Electric Corp.*, 406 Mass. 369, 377–79, 548 N.E.2d 182 (1990) the Supreme Judicial Court held that, in a commercial context, a remedy limitation provision which prevents a plaintiff from seeking consequential damages for breach of warranty, will also bar the plaintiff from seeking recovery under chapter 93A, where that claim is "merely duplicative" of the contract claim. Though the parties have not addressed this issue in their briefs, the court at this time believes that Winter Panel's ch. 93A claim is not "merely duplicative" of its breach of warranty claim.

Plaintiff's chapter 93A claim is not simply a restatement of its breach of warranty claim as was the case in *Canal Electric*. *See also Boston Helicopter Charter v. Agusta Aviation*, 767 F.Supp. at 377 (dismissing 93A claim where action was based on breach of contract and warranty claims, limited by damages limitations clause). Here, plaintiff's chapter 93A claim is predicated on a legal theory that is distinct from breach of warranty, namely, misrepresentation. Furthermore, the alleged facts underlying the 93A claims are not all reiterations of the facts giving rise to the alleged breaches of warranty. In particular, plaintiff's claim that Reichhold continued to represent itself as able to produce a chemical system for Winter Panel, despite the departure of Regenauer, and the relative inexperience of Loh and Lum, involves allegations of misrepresentations, either by affirmative statement or by omission of material information, which are distinct from the allegations supporting its breach of warranty claims. For this reason, defendant's damages limitations clause does not bar plaintiff's chapter 93A claims sounding in misrepresentation.

■ Dismissal may, however, be appropriate on other grounds not yet addressed by the parties. First, without more, plaintiff may not maintain an action for misrepresentation based on alleged promises by Reichhold that it would be able to supply a chemical system to produce marketable insulation panels. Statements of opinion or judgment relating to future events are not actionable, where the future event is not fully within the declarant's control. *See Logan*, 736 F.Supp. at 1200. The product that Winter Panel was attempting to produce was experimental in nature. Furthermore, the ultimate manufacturing process was conducted by Winter Panel, and thus was not in Reichhold's control. Therefore, statements attributable to Reichhold concerning the potential viability of Winter Panel's product and its ability to produce chemicals suited to Winter Panel's manufacturing process constitute only non-actionable statements of belief.

■ Second, the court doubts that any of Winter Panel's allegations can support an action under chapter 93A. Winter Panel has

not demonstrated that Reichhold engaged in any conduct that "attain[ed] a level of rascality that would raise an eyebrow of someone injured in the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979); *see also Logan*, 736 F.Supp. at 1188. The court recognizes that facts supporting a claim of fraud or deceit generally will be enough to maintain an action under chapter 93A. *See Nickerson v. Matco Tools Corp.*, 813 F.2d 529 (1st Cir.1987). However, besides the statements discussed above, which constitute mere statements of belief, the only facts plaintiff has produced to support a misrepresentation claim relate to Reichhold's failure to inform Winter Panel that Loh and Lum lacked practical expertise in the development of two-part urethane foam systems. Knowing non-disclosure of information necessary to make affirmative statements complete or non-misleading will give rise to an action for misrepresentation, including an action under chapter 93A. *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 414–19 (1st Cir.1985).[8] Simply neglecting to discuss Loh and Lum's lack of practical experience with the precise methods of production pursued by Winter Panel, however, does not at present seem to be the kind of knowing omission that achieves the level of rascality necessary to find a violation of chapter 93A.

As they have not yet adequately addressed this issue, the parties should in their submissions to the court discuss the viability of plaintiff's chapter 93A claim.

## IV. *ORDER*

For the reasons discussed above, the final disposition of defendant's motion for summary judgment requires fuller factual development and legal analysis. Therefore, it is hereby ORDERED that:

1. The parties shall by May 21, 1993, conduct all discovery, including depositions, interrogatories and document requests, reasonably necessary to determine whether Reichhold's invoices were received by Winter Panel no later than the shipments of goods at issue in this case.

2. The parties shall again confer and advise the court by May 28, 1993, whether they have agreed to a settlement of the case.

3. If the case is not settled, the parties shall by June 4, 1993, file memoranda, accompanied by affidavits, excerpts of depositions, and/or relevant documents to inform the court whether Reichhold's invoices were received by Winter Panel no later than the goods, and to discuss further whether plaintiff can maintain its cause of action under Mass.Gen.L. ch. 93A.

4. A hearing on the motion for summary judgment and/or final pre-trial conference shall be held on June 17, 1993 at 3:00. If the motion for summary judgment is denied, trial will commence on August 9, 1993.

---

8. However, to maintain its cause of action, plaintiff must point to specific statements which were incomplete or misleading due to Reichhold's withholding of material information. *Cf. Rhone v. Energy North, Inc.*, 790 F.Supp. 353 (D.Mass.

1991) (dismissing pursuant to Fed.R.Civ.P. 9(b) misrepresentation claim which failed to identify specific statements). Plaintiff's allegations of misrepresentation at this time are vague and too general.