Claremont Flock v. Rockland Indus.    CV-98-346-JD  01/07/99

UNITED STATES DISTRICT COURT FOR THE<br>
DISTRICT OF NEW HAMPSHIRE

Claremont Flock Corp.

    v.                              Civil No. 98-346-JD

Rockland Industries, Inc.

O R D E R

The plaintiff, Claremont Flock Corporation ("Claremont"), brings this action against the defendant, Rockland Industries, Inc. ("Rockland"), alleging that Rockland breached four contracts between the two parties for a total of $77,588.00 of flock. Before the court is Rockland's motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the case to the Federal District Court for the District of Maryland (document no. 6).

Background[1]

Rockland, a Maryland corporation with its principal place of business in Baltimore, Maryland, and Claremont, a Delaware corporation with its principal place of business in Claremont,

---

[1] The facts related in the background section are taken from the complaint and the parties' submissions in support of and opposition to Rockland's present motion. The factual summary is provided for background purposes only, for resolution of the pending motion.

New Hampshire, have done business together over the past fourteen years. Their business relationship started in 1985 when Rockland contacted Claremont in New Hampshire regarding Claremont's products. Claremont produces cotton flock, a component of many of the textile products that Rockland manufactures.

Pursuant to the course of business that has evolved over the years, Rockland would initiate a purchase of flock by calling Claremont in New Hampshire, placing an order, and then sending a purchase order. The purchase orders and payments were sent to Claremont's post office box in Massachusetts. Claremont would fill the orders, shipping the flock to Rockland at its facilities in South Carolina and Maryland.

During the course of the business relationship between Rockland and Claremont, Rockland also contacted Claremont on numerous occasions to inquire about new products, product specifications, and other product related issues. On at least one occasion, an officer of Claremont visited Rockland in Maryland to discuss a type of flock for a purpose not directly related to this suit. Since at least 1994, Rockland has placed one or two orders per month with Claremont for flock.

On or around September 16 and 18, 1997, October 22, 1997, and November 6, 1997, Rockland placed orders with Claremont for flock totaling $77,588.00. Darlene Burns, an employee of

2

Rockland, placed the orders by telephone with Michelle Buckman, a Claremont Customer Service Representative responsible for filling customer orders. Rockland requested delivery of all four orders at the earliest possible delivery date, between two and six days after placing each order. Buckman understood that she was not to wait for Rockland's purchase orders before filling the orders. Claremont consequently did not wait for the purchase orders before it sent the flock. Once Claremont received Rockland's purchase orders it sent its invoices. Therefore, the sequence of events for the pertinent transactions was as follows: Rockland ordered the flock by telephone, Claremont sent the flock, Claremont received Rockland's purchase orders, and Claremont in response sent its invoices.[2]

Both the Rockland purchase orders and the Claremont invoices show that the orders were F.O.B. Claremont, New Hampshire. Each purchase order states that it is "confirming order to telephone 603/542-5151," which is Claremont's telephone number. See Supplemental Reply Mem. in Supp. of Rockland Industries, Inc.'s Mot. to Dismiss for Lack of Jurisdiction and Lack of Venue, or in the Alternative to Transfer, Ex. A ("Rockland Supp. Reply."). Printed on the back of each purchase order are "terms and

_____

[2]A common carrier was used by Rockland to transport the flock from Claremont, New Hampshire, to Rockland's facilities in Maryland and South Carolina.

3

conditions of purchase" provisions, one of which is a clause providing that the contract shall be construed according to the laws of Maryland in a court located in Maryland. However, on the backside of each Claremont invoice is a "terms and conditions of sale" clause that provides:

> None of the terms and conditions contained herein may be added to, modified, superseded or otherwise altered, regardless of anything contained in Buyer's purchase order form or otherwise, except to the extent such additions, modifications, or alterations or other terms are typed or handwritten in full (and not merely printed or incorporated by reference) in a document signed by an authorized officer of Seller.

Mem. in Supp. of Claremont's Obj. to Rockland's Mot. to Dismiss, Ex. 3. The same forms were used by Claremont and Rockland in each of the four transactions at issue, as well as in some of their prior dealings.

On May 29, 1998, Claremont filed this action in the United States District Court for the District of New Hampshire. Claremont alleges that Rockland has not paid for the flock Claremont sent pursuant to the orders of September 16 and 18, 1997, October 22, 1997, and November 6, 1997. Claremont seeks redress pursuant to 28 U.S.C.A. § 1332 diversity jurisdiction.

Rockland moves to dismiss this action for lack of personal jurisdiction, arguing that its contacts with New Hampshire are insufficient under the Due Process Clause. Rockland also asserts that this action should be dismissed for lack of venue because a

4

substantial part of the events or omissions giving rise to Claremont's claim did not occur in New Hampshire. In the alternative, Rockland seeks transfer to the United States District Court for the District of Maryland, based primarily on the presence of a forum selection clause on the backside of its purchase orders.

Discussion

A. Personal Jurisdiction

    1. Standard of Review

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of persuasion that jurisdiction exists. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); see also, Massachusetts School of Law v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The court assesses the motion to dismiss under the prima facie standard because the facts relating to personal jurisdiction are essentially undisputed. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712 (1st Cir. 1996). Under this standard, the court treats facts affirmatively alleged by the plaintiff as true, construing them "in the light most congenial to the plaintiff[]," and "then add[s] to the mix [uncontradicted] facts put forth by the

5

defendant[]" in assessing the motion.  <u>Massachusetts School of</u>

<u>Law</u>, 142 F.3d at 34.  The requirements of both the state's long-

arm statute and the Due Process Clause of the Fourteenth

Amendment must be satisfied if the plaintiff is to avoid

dismissal.[3]

2.  <u>Minimum Contacts Analysis</u>

The Due Process Clause of the Fourteenth Amendment

proscribes the exercise of personal jurisdiction over a party

when it offends "traditional notions of fair play and substantial

justice."  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310,

316 (1945).  Jurisdictional inquiry under the Due Process Clause

focuses upon the contacts of the party with the forum state.

<u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408,

413-414 (1984).  The defendant's conduct must bear a "substantial

connection with the forum state" such that the defendant "should

reasonably anticipate being haled into court there."  <u>Burger King</u>

<u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 473-477 (1985).  The First

Circuit uses a three-part test to assess whether a defendant has

---

[3]New Hampshire Revised Statutes Annotated (RSA) § 293-A:15.10 provides for jurisdiction "to the full extent that federal law will allow."  <u>See</u> <u>Anderson v. Century Products Co.</u>, 943 F. Supp. 137, 141 (D.N.H. 1996).  As such, the court analyzes whether exercising personal jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  <u>Id.</u>

sufficient minimum contacts with a forum to support personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (quoting United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). Each prong of the three-part test is considered seriatim.


        a.  Relatedness

The relatedness requirement is met when the cause of action "directly arises out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389. To establish relatedness "[i]n a contract case, the defendant's forum based activities must be 'instrumental in the formation of the contract'". Pleasant Street, 960 F.2d at 1089 (quoting Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983)).

In this case Claremont asserts a claim for material breach of contract that is alleged to have occurred when Rockland failed to pay for flock that it had ordered over the telephone from

7

Claremont in New Hampshire.  Rockland initiated all of the purchases related to the breach of contract claim by phoning a Claremont representative in New Hampshire.  Rockland's forum based contacts, phoning Claremont to place its orders, are contacts for the purpose of relatedness.  See Sawtelle, 70 F.3d at 1389-90 ("The transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of [relatedness]").  Therefore, Rockland's "forum based activities [were] 'instrumental in the formation of the contract.'"  Pleasant Street, 960 F.2d at 1089 (quoting Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983)); see also, Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) ("Because the very document that represents BPC's forum-related activity is itself the cause and object of the lawsuit, this activity comprises the source and substance of, and is thus related to, Pritzker's squabble with BPC.").  Accordingly, the relatedness prong of the minimum contacts analysis is met.


        b.  Purposeful Availment

    "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated or fortuitous contacts with the forum state."  Sawtelle, 70 F.3d at 1391 (quotations and

8

citations omitted).  The First Circuit has "observed that the cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability."  Id.

"The defendant's contacts with the forum state must be voluntary--that is, not based on the unilateral actions of another party or a third person."  Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996).  Rockland initiated all contacts underlying the cause of action with Claremont by phoning Claremont in New Hampshire and ordering the flock on credit.  When Rockland solicited Claremont for flock on the four occasions most pertinent to this suit, in the same fashion it solicited Claremont over the course of their fourteen year relationship, it voluntarily contacted the forum state.  See Vencedor Mfg. Co., Inc. v. Gougler Industries, Inc., 557 F.2d 886, 891 (1st Cir. 1977) (solicitation meets the standard of voluntariness).

The "'foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  Donatelli v. National Hockey League, 893 F.2d 459, 464 (1st Cir. 1990) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Under the foreseeability prong, "a party who purposefully avails himself of the forum's benefits and privileges should reasonably

9

anticipate that obligations may accompany the harvest." Id. By entering into a contract and receiving goods from a corporation in New Hampshire, Rockland purposefully availed itself of the forum's benefits and privileges. See Vencedor, 557 F.2d at 892 ("The primary benefit that any nonresident corporation seeks from the law of a foreign state is enforcement of the contracts it has made with that state's residents."). Although Rockland sent the purchase orders and payments to an address in Massachusetts, the record indicates that Rockland was aware it was initiating contractual relations with a corporation in New Hampshire. This is based on the phone calls to New Hampshire to initiate the contracts, the F.O.B. Claremont, New Hampshire, terms in the purchase orders and invoices, Claremont's New Hampshire address listed at the top of the invoices, and other correspondence, on at least one occasion, to Claremont in New Hampshire.

In conclusion, Rockland initiated contact with and ordered flock from Claremont, a New Hampshire corporation, it negotiated the pick-up date, arranged for its common carrier to pick up the flock, took the flock on credit, and then allegedly failed to pay for the flock. Moreover, these acts took place in the context of a fourteen year relationship with Claremont. The court concludes that Rockland's contacts with New Hampshire were voluntary, not random, isolated or fortuitous, and that suit in New Hampshire

10

was foreseeable.

c. <u>Gestalt Factors</u>

Pursuant to the First Circuit's three-part analysis, the court also considers other factors which bear upon the fairness of haling non-resident defendants into court. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1394. These considerations, referred to as the "Gestalt factors," require the court to consider: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." <u>Id.</u> "The purpose of the Gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." <u>See</u> <u>Nowak</u>, 94 F.3d at 717.

> This court has thus adopted a sliding scale approach: "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." The reverse is equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness.

<u>Id.</u> (quoting <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 210 (1st Cir. 1994)). The Gestalt factors are analyzed in this

11

case in light of a strong showing of purposeful availment by the plaintiff.

Any travel to an out-of-state forum for purposes of litigation is in some sense burdensome.  However, for this particular Gestalt factor to have significance, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.  See id. at 718.  Rockland has not provided any facts that would make its appearance in New Hampshire especially burdensome.  Moreover, given that Rockland's witnesses are located in both Maryland and South Carolina, travel is inevitable for at least some of Rockland's potential witnesses.

Where the injury occurred in New Hampshire to a New Hampshire resident, this forum has a demonstrable interest in providing effective and convenient relief for its residents to redress injuries inflicted by out-of-state actors.  See Sawtelle, 70 F.3d at 1395.  In this case, the plaintiff is physically located in New Hampshire and, in any event, the plaintiff's choice of forum must be accorded deference with respect to the issue of its own convenience.  See id.  The judicial system's interest in the effective resolution of the controversy does not weigh in either party's favor.  See id.  Finally, an analysis of

12

the Gestalt factors does not reveal anything that would render personal jurisdiction unfair to Rockland and in fact supports jurisdiction.

The court finds that the exercise of specific personal jurisdiction over Rockland is warranted. Rockland's motion to dismiss for lack of personal jurisdiction is denied.

B. Venue

Rockland moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) arguing that venue is not proper under 28 U.S.C.A. § 1391(a). Rockland alleges that a substantial part of the events or omissions giving rise to the claim did not occur in New Hampshire. To support its motion, Rockland asserts that the telephone calls to order the flock originated in Maryland, that the contracts consisted of Rockland's purchase orders sent from Maryland and shipments sent to Maryland and South Carolina, and that the event giving rise to the claim is non-payment in Massachusetts, not in New Hampshire.[4]

When venue is challenged, the plaintiff bears the burden of showing that venue is proper in the forum state. See Figawi,

---

[4]Claremont's invoice directs payment to: Claremont Flock Corporation, P.O. Box 15439, Worcester, MA 01615-0439. The address on the invoice is a "lockbox" used for receiving payments directed to Claremont's Massachusetts bank. Affidavit of James A. Vogt at para. 9.

13

Inc. v. Horan, 16 F. Supp. 2d. 74, 77 (D. Mass. 1998). Because jurisdiction in this case is founded solely on diversity of citizenship, 28 U.S.C.A. § 1391(a) is the proper venue provision to apply to this case. See 28 U.S.C.A. § 1391(a) (West 1998); see also, LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4, 6 (1st Cir. 1984). Section 1391(a)(2) provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." "Under [this] section there may be several districts that qualify for proper venue." F.A.I. Electronics Corp. v. Chambers, 944 F. Supp. 77, 80 (D. Mass. 1996). "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." Id. (citations and quotations omitted).

Activities giving rise to the claim took place in both Maryland and New Hampshire. The record indicates that the following activities relating to the claim occurred in Maryland: an employee of Rockland placed the orders for flock from Maryland, some of the flock was ultimately delivered to Rockland

14

in Maryland, and Rockland's decision not to remand payment to Claremont occurred in Maryland. The record indicates that the following activities relating to the claim occurred in New Hampshire: an employee of Claremont in New Hampshire took the orders and conducted whatever negotiation was initially necessary; Claremont processed the orders for flock in New Hampshire; Claremont produced the flock in New Hampshire; Claremont packaged the flock in New Hampshire; and Claremont placed the flock with Rockland's common carrier in New Hampshire. Thus, a substantial portion of the events giving rise to the claim occurred in New Hampshire. Venue in New Hampshire is therefore proper. Accordingly, Rockland's motion to dismiss for lack of venue is denied.

C.  Motion to Transfer

Finally, Rockland moves to transfer this case to the United States District Court for the District of Maryland pursuant to 28 U.S.C.A. § 1404(a).[5] Rockland asserts that the forum selection clause on the back of its purchase order form limited adjudication of any disputes arising from the contracts at issue to courts located in Maryland, and should be given significant

_____

[5]The court notes that the defendant has not moved for dismissal or transfer under 28 U.S.C.A. § 1406(a) (West 1998), pursuant to Federal Rule of Civil Procedure 12(b)(6).

15

weight in the section 1404(a) analysis.  Rockland also asserts that Maryland is more convenient because it is the headquarters of Rockland and is relatively "equidistant" between the location of potential witnesses in New Hampshire, Maryland, and South Carolina.  Lastly, Rockland argues that pursuant to the choice of law clause providing that the contract be construed under the law of Maryland, the court in Maryland has more experience adjudicating disputes arising under Maryland law.[6]

Change of venue pursuant to 28 U.S.C.A. § 1404(a) is within the discretion of the district court, wherein the district court considers, on a case-by-case basis, the convenience of the witnesses, fairness, and the interests of justice.[7]  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); see also, 28 U.S.C.A. § 1404(a).  "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  Terra Intern, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 695 (8th Cir. 1997).  However, in cases where a valid forum selection

---

[6]The choice of law clause is located at paragraph 21 on the back of Rockland's purchase order form.

[7]28 U.S.C.A. § 1404(a) (West 1998) provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

16

clause dictates that the lawsuit should be adjudicated in another forum, many courts have concluded that the burden shifts to the party opposing the motion. See id. (declining to rule on the issue but discussing cases); see also, Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3rd Cir. 1995); In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)); Reo Sales, Inc. v. Prudential Ins. Co., 925 F. Supp. 1491, 1492-93 (D. Colo. 1996). The First Circuit has not addressed the issue. Following the reasoning used in other circuits, once the defendant demonstrates the existence of a valid forum selection clause, the plaintiff bears the burden to show that transfer would be inappropriate. See In re Ricoh Corp., 870 F.2d at 573.

Rockland argues that the question of the validity of the forum selection clause in its purchase order is controlled by § 2-206(1)(b) of the Uniform Commercial Code.[8] Section 2-206(1)(b) provides that "an order or other offer to buy goods for

---

[8]The state law of either Maryland or New Hampshire likely governs the interpretation of the parties' agreement. For purposes of this motion, both parties rely upon the Uniform Commercial Code ("UCC"). Rockland states that Maryland and New Hampshire have both adopted the UCC and uses a generic reference to the "UCC." Claremont cites the New Hampshire statute but also relies on cases from other jurisdictions noting their analyses of "UCC" provisions. As no apparent conflict exists between the two applicable jurisdictions, compare Md. Code Ann. Com. Law § 2-206, 2-207 (1997) with N.H. RSA § 382-A:2-206, 2-207 (1994), for purposes of this motion only the court will also refer to UCC provisions generically without reference to a particular jurisdiction.

prompt or current shipment shall be construed as inviting acceptance . . . by the prompt or current shipment of [goods]." Rockland asserts that its purchase orders constituted offers and Claremont's subsequent shipments were acceptances. In support, Rockland relies upon Winter Panel Corp. v. Reichhold Chemicals, Inc., 823 F. Supp. 963, 970 (D. Mass. 1993) and Glyptal Inc. v. Engelhard Corp., 801 F. Supp. 887, 893 (D. Mass. 1992).[9]

The court finds Rockland's argument unavailing under the particular facts of this case. Winter is distinguishable because the shipments were made "pursuant to a written purchase order." Winter, 823 F. Supp. at 966. Similarly, in Glyptal, Glyptal argued "that each of the three contracts was formed by Glyptal's purchase order, and the subsequent shipment of the goods by [defendant], which constituted an acceptance." Glyptal, 801 F. Supp. at 892. The court agreed with Glyptal and determined that the shipments were in response to the purchase orders. Id. at 894.

In this case, the record does not indicate that Claremont received Rockland's purchase orders, and then, in response to the purchase orders, shipped the flock to Rockland without invoices. Instead, the facts in the record at this point demonstrate that

_____

[9]Massachusetts law governed both cases as pertinent to this discussion.

18

after oral communications over the telephone, and in response to the oral communications, Claremont shipped flock to Rockland. The record reflects that Claremont had already performed before it even received the purchase orders. Indeed, Claremont's representative who took the Rockland orders understood that Claremont was not to wait for the arrival of the purchase orders before delivering the flock to Rockland. Once Claremont did receive the purchase orders, it sent its invoices in response. Claremont's invoices objected to any terms adding to or altering the terms of the invoices.

Nor in this case does Rockland's reliance on the parties' prior course of dealings support its contention that § 2-206 controls. The record presented to the court is ambiguous as to the details of the parties' prior course of dealings and the significance of, among other things, their oral communications, purchase orders, shipments, and invoices in those dealings. The record includes only a small percent of the parties' prior transactions, too few to support any conclusions about a pattern in their prior course of dealings. The record indicates that on average almost eight days passed between the purchase order date and the shipping date. A reasonable inference is that on some occasions Claremont had substantially less than eight days to ship the flock, and therefore shipped the flock before receiving

19

the purchase orders, while on other occasions the purchase orders arrived well before the shipping date.

In summation, as to the transactions directly pertinent to this action, the record at this point does not indicate that the parties discussed the forum selection issue over the phone, nor that Claremont shipped the flock and thereby performed in response to Rockland's purchase order as Rockland contends. Moreover, the forum selection clause in Rockland's purchase order is contradicted by Claremont's invoice provision precluding the addition to or alteration of any terms without signature by the seller. The court therefore concludes on the record presented to it at this time, for the purposes of this motion, that the defendant has failed to establish that there was a valid forum selection clause. As such, the burden of proving that the transfer is warranted rests on Rockland. See In re Ricoh Corp., 870 F.2d at 573.

The court must now decide whether "[for] the convenience of parties and witnesses, in the interest of justice," a transfer is appropriate. 28 U.S.C.A. § 1404(a) (West 1998). The parties have not yet identified the witnesses each side intends to call at trial, nor the factual issues likely to be determinative. The fact that the flock Claremont alleges Rockland has failed to pay for was ordered from Claremont in New Hampshire, produced in New

20

Hampshire, packaged in New Hampshire, and delivered to a common carrier in New Hampshire indicates that numerous witnesses from New Hampshire would potentially be inconvenienced by travel to Maryland.[10] Rockland asserts that venue would be more convenient in Maryland because it is "equidistant" between New Hampshire and South Carolina, and this is where its records and most of its employees are located. This argument only illustrates that any convenience afforded to Rockland's witnesses would be at the expense of the plaintiff's witnesses. See Zahn v. Yucaipa Capital Fund, 218 B.R. 656, 678 (D.R.I. 1998) ("[T]ransfer is inappropriate if it merely shifts inconvenience from one party to the other.").

Rockland also asserts that the district court sitting in Maryland would be better able to interpret Maryland law. In this order the court has not decided what law to apply to the contract dispute. However, even if Maryland law is found to be controlling, this court is able to interpret Maryland law. See Elmendorf Grafica, Inc. v. D.S. America (EAST), Inc., 48 F.3d 48, 52 (1st Cir. 1995) ("Federal courts are used to researching and analyzing the law of different jurisdictions."). Thus, the choice of law factor does not weigh in favor of the motion to

---

[10]The court notes that witnesses to the original oral communications are likely to be from both New Hampshire and Maryland.

21

transfer.

Given the presumption in favor of the plaintiff's choice of forum, Rockland's burden to overcome this presumption, the potential inconvenience by travel to Maryland of numerous witnesses for Claremont, the court's ability to interpret Maryland law if it should become necessary, and the lack of any indication that maintaining a defense in New Hampshire would be unfair or unreasonable for Rockland, Rockland's motion to transfer is denied.

## Conclusion

In light of the above discussion, Rockland's motion to dismiss the complaint for lack of personal jurisdiction and for lack of venue is denied, as is its motion to transfer pursuant to 28 U.S.C.A. § 1404(a) (document no. 6).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

January 7, 1999

cc:  Bret D. Gifford, Esquire
     Michael R. Callahan, Esquire

22