OLD COLONY RAILROAD COMPANY *vs.* CITY OF NEW BEDFORD.

Suffolk.   March 22, 1905. — May 19, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Municipal Corporations.   Contract,* Validity.   *Railroad.*

A city may make a valid contract with a railroad company that in consideration of the railroad company withdrawing its opposition to the laying out of a highway at grade under Pub. Sts. c. 112, § 125, across the railroad of the company, the city will pay the expense of erecting gates and maintaining a gateman at the crossing, if the agreement is made in contemplation of the authorization by the county commissioners of the laying out of the highway across the railroad and such authorization subsequently is given by an order of the county commissioners adjudging that the public safety requires the erection of gates at this crossing and a person to open and close them, as the expense may be regarded as "incident to constructing and maintaining the way at such crossing," and thus an expense for which the city is liable under Pub. Sts. c. 112, § 128, until or unless it is otherwise determined by an award of a special commission.

CONTRACT, for $2,724.33 on an account annexed for money paid by the plaintiff at the request of the defendant for erecting and maintaining gates at the crossing of Sawyer Street, a highway of the defendant, with the railroad of the plaintiff, and for the services of a gateman at that crossing from April 6, 1894, until November 6, 1900, inclusive.  Writ dated November 9, 1900.

In the Superior Court the case was heard upon an agreed statement of facts by *Gaskill,* J. who gave judgment for the defendant; and the plaintiff appealed.

*J. H. Benton, Jr. & H. W. Beal,* for the plaintiff.
*A. Hemenway & J. W. Farley,* for the defendant.

KNOWLTON, C. J.    In the year 1885 it was thought desirable to lay out a street at grade across the plaintiff's railroad in New Bedford, and the board of aldermen, acting under the Pub. Sts. c. 112, § 125, directed the city solicitor to proceed in their name, by a petition before the county commissioners, to obtain authority so to lay out this street.    At the hearing before the county commissioners the railroad company objected to the granting of the petition, because of the liability to accident from such a crossing, and the possible or probable necessity of maintaining gates for the protection of the public.    Thereupon an agreement was made between the railroad company, by its counsel, and the city, by its solicitor, that the company should consent to the granting of the petition on condition that the city be required to erect and maintain a gate at the crossing, and station an agent there to open and close it when an engine or train should pass. The county commissioners, reciting this agreement in their order, adjudged that the public convenience and necessity required the laying out of the street across the way at grade, and suspended their proceedings until action should be taken in regard to the matter by the railroad commissioners.    The railroad commissioners, upon petition under this section, consented to the laying out and construction of the street as proposed, and the county commissioners then made a final decree reciting their former proceedings, and authorizing the laying out of the way across the railroad at grade, and adjudged that public safety required the erection of gates at the crossing, with an agent to open and close them when an engine or train should pass.    They then ordered the maintenance of the gates with a gateman, and, referring to the agreement on file, directed that the expenses of the gates and agent be paid by the city of New Bedford.    The street was accordingly laid out and constructed, and the city counsel, by an order, authorized the mayor, in behalf of the city, to contract with the railroad company for the erection of the gates and the providing of an agent to tend them as required by the order of the county commissioners.    Such a contract was accordingly made, and the railroad company has ever since maintained the gates and paid the agent for operating them.    The

expense of this was paid by the city to the plaintiff for nearly eight years, but lately the city has declined to pay, on the ground that it has not a legal right to expend money for this purpose. This action is brought to recover for the expense of maintaining the gateman.

The original agreement made by counsel before the county commissioners, which lies at the foundation of the claim, may be considered in either of two aspects: first as an attempt to buy off opposition to the petition filed by the mayor and aldermen, and thereby to procure from a quasi judicial tribunal a decision which might not be made if the questions before the tribunal were to be decided solely with reference to the interests of the public and of the private parties directly concerned; and secondly, as an agreement to assume an obligation for the benefit of the public, which the railroad company feared might otherwise rest upon it. Viewed simply and narrowly as an attempt to influence the decision of the county commissioners by paying an objecting party to withdraw his opposition to a petition, we think it plain that it is not within the powers conferred by the statute upon cities and towns. Such a contract, made for no other purpose, in reference to a matter like the laying out of a highway, would be against public policy. *Coppock* v. *Bower*, 4 M. & W. 361. *Howard* v. *First Independent Church of Baltimore*, 18 Md. 451. *Pingry* v. *Washburn*, 1 Aik. (Vt.) 264. *Jacobs* v. *Tobiason*, 65 Iowa, 245. *Maguire* v. *Smock*, 42 Ind. 1. *Smith* v. *Applegate*, 3 Zabr. 352. *Doane* v. *Chicago City Railway*, 160 Ill. 22. So too, if we view it solely in reference to this possible purpose, it purports to impose a pecuniary obligation upon the city, which the city has no right to assume, and for which it cannot lawfully tax its inhabitants. *Mead* v. *Acton*, 139 Mass. 341. *Coolidge* v. *Brookline*, 114 Mass. 592. *Minot* v. *West Roxbury*, 112 Mass. 1. *Frost* v. *Belmont*, 6 Allen, 152. *Claflin* v. *Hopkinton*, 4 Gray, 502.

But the plaintiff's claim does not rest solely nor chiefly upon the executed promise of the railroad company to withdraw its opposition to the petition. It stands upon a broader ground. While in ordinary cases we should be inclined to hold that a city or town could not bind itself by a contract with a railroad company to pay the expense of erecting gates and maintaining

a gateman at a crossing, because such a contract would be outside of the statutory provisions authorizing the expenditure of money for the construction and maintenance of ways, we have, for a case of this kind, a statute that creates a liability on the part of the city, which well might be made the subject of a contract, at least for a reasonable time.    The last part of Pub. Sts. c. 112, § 128, is as follows: " If, after the laying out and making of a railroad, the county commissioners authorize a highway or other way to be laid out across the railroad, all expenses of and incident to constructing and maintaining the way at such crossing shall be borne by the county, city, town, or other owner of the same, until or unless in either case it is otherwise determined by an award of a special commission, as provided in the five following sections."    The county commissioners having adjudged that the public safety required the erection of gates at this crossing, with a person to open and close them, the expense of this was "incident to constructing and maintaining the way at such crossing," within the meaning of the statute.    It is to be assumed that the liability created by this statute was one of the grounds of the original agreement, and was the principal ground of the final contract on which this suit is brought.

We are of opinion that there should be a

*Judgment for the plaintiff.*