SUPREME JUDICIAL COURT 
 
 MARIO NICOSIA[1] & another[2] vs. BURN, LLC, & others[3]

 
 Docket:
 SJC-13755
 
 
 Dates:
 October 10, 2025 - December 16, 2025
 
 
 Present:
 Suffolk
 
 
 County:
 Budd, C.J., Gaziano, Kafker, Georges, Dewar, & Wolohojian, JJ.
 

 
 Keywords:
 Alcoholic Liquors, License, Alcoholic Beverages Control Commission. Boston Licensing Board. Municipal Corporations, Licensing board. Real Property, Lease. Contract, Performance and breach, Lease of real estate, Waiver. Waiver. Public Policy. Consumer Protection Act, Unfair or deceptive act. Practice, Civil, Summary judgment, Attorney's fees, Costs. Conversion.
 
 

       Civil action commenced in the Superior
Court Department on January 24, 2020.
      Motions for summary judgment were heard by
Peter B. Krupp, J., and the case was heard by Hélène Kazanjian, J.
      The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.
      Kevin M. Considine (Alexander Furey also
present) for Burn, LLC, & others.
      David Kelston (Noah Rosmarin also present)
for the plaintiffs.
      The following submitted briefs for amici
curiae:
      Albert L. Farrah for Suzanne Iannella.
      Ben Robbins & Frank J. Bailey for
Pioneer New England Legal Foundation.
      Joshua M. Bowman, Richard Heller, &
Scott McConchie for Spark Business Consulting, Inc.
      KAFKER, J. 
The primary issue presented in this case is whether a contractual
provision prohibiting the pledge of a license to serve alcoholic beverages
(liquor license or license) as collateral for a loan violates public
policy.  N&M Trust VII (N&M)
leased a commercial property to Burn, LLC (Burn).[4]  As part of the lease, N&M sold its liquor
license for the property to Burn for one dollar.  The lease also prohibited Burn from pledging
the liquor license as collateral for a loan (anti-pledge provision), and
provided that any pledge constituted a default under the lease.  The lease further required Burn to transfer
the license back to N&M for one dollar at the end of the lease term.  Prior to the termination of the lease,
however, Burn pledged the license to its principal, Brian Lesser, as collateral
for a loan.  When N&M discovered that
the license had been pledged to Lesser, N&M terminated the lease and
demanded return of the license.
      The plaintiffs, Mario Nicosia,
individually and as trustee of N&M, and N.I.C. Limited Partnership,[5]
initiated the present suit against the defendants, Lesser, BL Note Holding
Tremont Street, LLC,[6] and Burn. 
Following a grant of partial summary judgment and a jury-waived trial on
the remaining claims, a judgment awarding damages, attorney's fees, and costs
entered for the plaintiffs, and the defendants appealed.  The defendants make four primary arguments on
appeal.  First, the defendants argue that
the motion judge erred in granting summary judgment in favor of the plaintiffs
on their breach of contract claim because the anti-pledge provision is
unenforceable as against public policy. 
Second, the defendants argue that the trial judge erred in finding for
the plaintiffs on their G. L. c. 93A, § 11, claim, because Burn
pledged the license to Lesser on the good faith belief that the anti-pledge
provision was unenforceable.  Third, the
defendants argue that the trial judge erred as a matter of law in finding the
defendants liable to the plaintiffs for conversion of the liquor license when
Burn refused to cooperate with N&M to sell the license back.  Fourth, the defendants argue that the trial
judge abused her discretion in awarding the plaintiffs attorney's fees and
costs.  
      We hold that (1) the anti-pledge
provision is enforceable because it does not violate G. L. c. 138,
§ 23, or public policy; (2) the record supports a determination that
Lesser, acting individually and on the behalf of all the defendants, willfully
and knowingly engaged in unfair and deceptive conduct when he falsely affirmed
under oath to the Boston licensing board (licensing board) and Alcoholic
Beverages Control Commission (ABCC) that the pledge agreement did not violate
or constitute a default of any other agreement; (3) Burn is liable for
breach of contract but not conversion of the license because N&M neither
possessed nor was entitled to immediate possession of the license at the time
Burn refused to cooperate with N&M to sell the license back; and
(4) the trial judge did not abuse her discretion in awarding the
plaintiffs attorney's fees and costs.[7]
      1. 
Background.  a.  Facts. 
On August 2, 1996, N&M and Burn executed a written lease by which
N&M agreed to rent a commercial property in downtown Boston to Burn, a
prospective restaurant operator.  In §
11.24 of the lease, N&M agreed to sell its liquor license for the property
to Burn for one dollar, and Burn agreed to seek regulatory approval for the
sale from the licensing board and ABCC. 
Section 11.24 also contained the anti-pledge provision, which expressly
prohibited Burn from pledging or transferring the license without N&M's
prior written consent.  Burn further
agreed in § 11.24 that it would "for one dollar . . . sell the
[license] to [N&M] upon expiration or earlier termination" of the
lease term, "obtain the approval of [the licensing board] and ABCC of the
resale of the [license] to [N&M]," and "execute all documents and
attend all hearings necessary to effectuate such sale."  Section 11.24 expressly recognized that the
license was "subject to the jurisdiction of the [licensing board] and the
[ABCC]," and Burn agreed to "comply with [G. L. c. 138]"
and "all rules, regulations, orders and requirements of [the licensing
board] and ABCC relative to the sale of alcoholic beverages."  The lease stated that Burn's violation of the
anti-pledge provision would constitute an event of default, permitting N&M
to terminate the lease and to seek specific performance and damages.[8]
      As contemplated by the lease, N&M
transferred the license to Burn, and Burn submitted an application for the
transfer to the licensing board and ABCC. 
The application, which included a copy of the lease, was signed by both
parties and noted that Burn would hold all direct beneficial or financial
interests in the license posttransfer. 
After licensing board approval, the ABCC approved the transfer on
October 1, 1996.  The parties renewed the
lease on substantially the same terms three times in the ensuing years, with
the last renewal extending the lease's term through 2022.
      In 2018, Burn hired Lesser to manage its
business operations.  Lesser thereafter
loaned Burn $445,000, and Lesser and Burn entered into a pledge agreement by
which Burn pledged the liquor license to Lesser as collateral for the
loan.  In the pledge agreement, Burn
represented that the pledge would not "violate or constitute a default
under the terms of any agreement, indenture, or other instrument
. . . applicable to [Burn] or any of its property," despite the
anti-pledge provision in the lease.  In
July 2019, Lesser caused Burn to apply to the licensing board and ABCC for
approval of the license pledge, which they granted.  In this application, Lesser falsely affirmed
under oath that the pledge agreement, including the representation that the
pledge did not violate or constitute a default under any agreement, was truthful.

      Nicosia and Lesser subsequently met to
discuss the lease on December 31, 2019. 
The parties dispute what was said at the meeting, but according to
Nicosia, Lesser claimed that Burn owned the liquor license and then offered to
pay Nicosia $100,000 in a brown paper bag. 
On January 7 and 8, 2020, the plaintiffs demanded by letter that the
defendants terminate the pledge on the license and gave notice of default and
termination of the lease.  The plaintiffs
then initiated the present suit.
      b. 
Procedural history.  The
plaintiffs' amended complaint alleged, among other things, that Burn committed
a breach of the lease, the defendants knowingly and willfully violated
G. L. c. 93A, and the defendants converted the license.  The defendants counterclaimed for breach of
contract, conversion, and c. 93A damages.
      On the parties' cross motions for summary
judgment, the motion judge granted the plaintiffs summary judgment on the
contract claims.  In sum, the motion
judge concluded that the lease, including the anti-pledge provision, was
enforceable; Burn's pledge of the license to Lesser constituted a default under
the lease; and Burn was required to effectuate the sale of the license back to
N&M.  The parties waived their rights
to a jury trial and detailed findings of fact on the remaining c. 93A and
conversion claims.  After a bench trial,
the trial judge found for the plaintiffs on those claims and awarded treble
damages on the c. 93A claim.  The
plaintiffs then requested $394,427 in attorney's fees and $14,192.64 in costs,
which the trial judge granted.  The
defendants appealed, and we transferred the case to this court on our own
motion.
      2. 
Discussion.  a.  Enforceability of the anti-pledge
provision.  i.  Standard of review.  We review the motion judge's grant of summary
judgment on the breach of contract claims, including his finding that the
anti-pledge provision is enforceable, de novo. 
Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012).  "The standard of review of a grant of
summary judgment is whether, viewing the evidence in the light most favorable
to the nonmoving party, all material facts have been established and the moving
party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mut. Ins. Co., 410
Mass. 117, 120 (1991).  "When both
parties have moved for summary judgment, as they did here, we view the evidence
in the light most favorable to the party against whom judgment was
entered."  Wortis v. Trustees of
Tufts College, 493 Mass. 648, 662 (2024).
      ii. 
Freedom of contract and public policy. 
"[T]he general rule of our law is freedom of contract," which
"rests on the premise that it is in the public interest to accord
individuals broad powers to order their affairs through legally enforceable
agreements" (citations omitted). 
Beacon Hill Civic Ass'n v. Ristorante Toscano, Inc., 422 Mass. 318, 320
(1996).  Nonetheless, "public policy
sometimes outweighs the interest in freedom of contract, and in such cases the
contract will not be enforced." 
Gattineri v. Wynn MA, LLC, 493 Mass. 13, 19-20 (2023), quoting Feeney v.
Dell Inc., 454 Mass. 192, 199-200 (2009). 
For a contract to violate public policy, "[t]he grounds for a
public policy exception must be clear in the acts of the Legislature or the
decisions of this court."  Trustees
of the Cambridge Point Condominium Trust v. Cambridge Point, LLC, 478 Mass.
697, 705 (2018), quoting Miller v. Cotter, 448 Mass. 671, 683 (2007).  This requires a "court's conviction,
grounded in legislation and precedent, that denying enforcement of a
contractual term is necessary to protect some aspect of the public
welfare."  Rawan v. Continental Cas.
Co., 483 Mass. 654, 666 (2019), quoting Beacon Hill Civic Ass'n, supra at 321.
      These general principles apply to
contractual waivers of statutory rights. 
"A statutory right or remedy may be waived when the waiver would
not frustrate the public policies of the statute" but may not be waived
"if the waiver could 'do violence to the public policy underlying the
legislative enactment.'"  Canal
Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 377-378 (1990), quoting
Spence v. Reeder, 382 Mass. 398, 413 (1981). 
"[T]he critical consideration in deciding if a particular statute
is reasonably interpreted to permit a waiver is whether doing so would
frustrate the purposes and policies that statute is designed to
advance."  Garrity v. Conservation
Comm'n of Hingham, 462 Mass. 779, 787 (2012).
      iii. 
General Laws c. 138, § 23, and the anti-pledge
provision.  General Laws c. 138 sets
forth the comprehensive licensing scheme that governs the issuance of licenses
to serve alcoholic beverages.  The
overarching purpose of the statute is to ensure that the ABCC and the local
licensing authority review and approve each license application, such that no
license is granted without their review and approval.  See Coyne v. Alcoholic Beverages Control
Comm'n, 312 Mass. 224, 227 (1942). 
Indeed, "[t]he general policy is perhaps best indicated by the
first paragraph of § 23," Connolly v. Alcoholic Beverages Control
Comm'n, 334 Mass. 613, 619 (1956):
"The terms
licenses and permits . . . are . . . transferable only as
provided in this chapter, and revocable by the granting authority, the
commonwealth, acting through the same officers or agents and under the same
delegated authority for any violation of this chapter or any regulation adopted
by the commission or local licensing authority consistent with the terms of
this chapter after opportunity for a hearing. 
The provisions for the issue of licenses and permits hereunder imply no intention
to create rights generally for persons to engage or continue in the transaction
of the business authorized by the licenses or permits respectively, but are
enacted with a view only to serve the public need and in such a manner as to
protect the common good and, to that end, to provide, in the opinion of the
licensing authorities, an adequate number of places at which the public may
obtain, in the manner and for the kind of use indicated, the different sorts of
beverages for the sale of which provision is made."
G. L.
c. 138, § 23, first par.
      As part of this licensing scheme, the
statute expressly permits pledging a license as collateral for a loan with the
approval of the local licensing authority and ABCC.  The final paragraph of § 23 states:  "Any license granted under the
provisions of this chapter may be pledged by the licensee for a loan, provided
approval of such loan and pledge is given by the local licensing authority and
the commission."  G. L.
c. 138, § 23, thirteenth par. 
This provision grants license holders some financial flexibility but
ensures that the core purpose of the statute -- oversight by the local
licensing authority and ABCC -- is preserved.
      The statute is silent on anti-pledge
provisions; they are neither expressly permitted nor expressly prohibited.  Unlike provisions permitting pledges,
however, anti-pledge provisions do not result in the potential transfer of the
license to another party.  Rather, they
do the opposite; they preclude pledges and thus foreclose the possibility of a
license transfer that has not been approved by the local licensing authority
and ABCC.
      For these reasons, we can discern no clear
public policy implicated by the anti-pledge provision.  The statute's core purpose is to establish
regulatory oversight, not to promote license pledges.  Contractual arrangements, including financing
restrictions "among 'commercially sophisticated' parties do[] not
generally raise public policy concerns." 
H1 Lincoln, Inc. v. South Wash. St., LLC, 489 Mass. 1, 24 (2022), S.C.,
495 Mass. 484 (2025), quoting Canal Elec. Co., 406 Mass. at 374.  The terms of the lease here -- including the
anti-pledge provision -‑ were fully disclosed to the licensing board and the
ABCC, and the anti-pledge provision affects only the ability of the licensee to
use the license as collateral to secure a private loan.
      Moreover, nothing about the anti-pledge
provision in this particular lease interferes with the licensing board and
ABCC's oversight.  To the contrary, § 11.24
of the lease repeatedly emphasized the need for regulatory approval:  the license was "subject to the
jurisdiction of the [licensing board] and the [ABCC]," Burn's sale of the
license back to N&M required "the approval of [the licensing board]
and ABCC," and Burn agreed to "comply with [G. L.
c. 138]" and "all rules, regulations, orders and requirements of
[the licensing board] and ABCC relative to the sale of alcoholic
beverages."
      The defendants reason that this case is
controlled by Beacon Hill Civic Ass'n, 422 Mass. at 323, where this court found
that a private agreement not to apply for a liquor license was unenforceable as
against public policy.  But Beacon Hill
Civic Ass'n is inapposite because the agreement at issue there thwarted public participation,
another public policy of G. L. c. 138.  In that case, a neighborhood civic
association agreed not to oppose a restaurant's application for a beer and wine
license in exchange for the restaurant's promise not to apply for an
all-alcohol license in the future.  Id.
at 319.  We emphasized that "a
public policy of open public participation is implicit in the statutory
scheme," which requires published notice of license applications and a
hearing, and permits taxpayers to petition to modify, suspend, revoke, or
cancel a license.  Id. at 321-322.  Accordingly, we held that because "the
right to participate in licensing proceedings is created by statute," and "the
application review provisions of c. 138 are grounded in general policy
concerns rather than protection of private property rights," the parties'
waivers "would destroy the very purpose of the statute" and were
therefore unenforceable (citation omitted). 
Id. at 322-323.  Here, by
contrast, the anti-pledge provision does not interfere in any way with public
participation in the licensing process and is only a limitation on the
licensee's ability to use the license as collateral to secure a private loan
from a potential lender.
      In sum, a contract provision prohibiting
the pledge of a liquor license as collateral for a loan is neither prohibited
by G. L. c. 138, § 23, nor "manifestly injurious to the
public interest and welfare" in violation of public policy (citation
omitted).  Beacon Hill Civic Ass'n, 422
Mass. at 321.  We therefore affirm the
motion judge's determination that the anti-pledge provision is enforceable.
      b. 
General Laws c. 93A claims. 
We next consider whether the trial judge properly concluded that the
defendants' conduct constituted "unfair or deceptive" conduct prohibited
by G. L. c. 93A, § 11, and whether any unlawful conduct was
"willful or knowing."  The
defendants argue that the trial judge erred in finding the defendants liable
under c. 93A because Lesser believed, in good faith, that the anti-pledge
provision was unenforceable.  
      "Where a judge makes findings of fact
in a bench trial, we review them for clear error."  H1 Lincoln, Inc., 489 Mass. at 13.  By contrast, we review the trial judge's legal
conclusions de novo.  Id.  "[W]hether a particular set of acts, in
their factual setting, is unfair or deceptive is a question of fact.  But whether conduct found to be unfair or
deceptive rises to the level of a chapter 93A violation is a question of
law."  (Quotations and citations
omitted.)  Id. at 13-14.  Where, as here, the parties waived detailed
findings of fact under Rule 20(2)(h) of the Rules of the Superior Court (2018),
we review the judgment "according to the standard of review that would
apply to a verdict by a jury in a case tried to a jury and to the judgment
entered thereon."  Rule 20(8)(b) of
the Rules of the Superior Court (2018). 
That is, construing the evidence in the light most favorable to the
judgment, the question is whether "anywhere in the evidence, from whatever
source derived, any combination of circumstances could be found from which a
reasonable inference could be drawn in favor of the [parties that are not
challenging the judgment]."  Motsis
v. Ming's Supermkt., Inc., 96 Mass. App. Ct. 371, 379-380 (2019), quoting Dobos
v. Driscoll, 404 Mass. 634, 656, cert. denied, 493 U.S. 850 (1989) (applying
standard in c. 93A case in which parties waived formal findings of fact
and rulings of law).
      General Laws c. 93A, § 11, makes
unlawful an "unfair or deceptive act or practice" in the course of
dealings between those "engage[d] in the conduct of any trade or
commerce."  Section 11 also permits
double or triple "actual" damages if the court concludes that the
conduct was willful or knowing. 
G. L. c. 93A, § 11. 
As we have repeatedly stated, "a breach of contract alone does not
amount to an unfair act or practice" for G. L. c. 93A,
§ 11, purposes (citation omitted). 
H1 Lincoln, Inc., 489 Mass. at 17 n.12, 25.  Rather, we look to whether the conduct
"is within at least the penumbra of some common-law, statutory, or other
established concept of unfairness . . . [or] is immoral, unethical,
oppressive, or unscrupulous" (quotations and citation omitted).  Massachusetts Farm Bur. Fed'n, Inc. v. Blue
Cross of Mass., Inc., 403 Mass. 722, 729 (1989).  Further, we have "repeatedly affirmed
that fraudulent misrepresentation is sufficient to establish deception under
G. L. c. 93A, § 11." 
H1 Lincoln, Inc., supra at 18, citing McEvoy Travel Bur., Inc., v.
Norton Co., 408 Mass. 704, 714 (1990).
      The evidence at trial was more than
sufficient to support the judge's determination that the defendants knowingly
and willfully engaged in unfair or deceptive acts.  In particular, the record supported a
determination that Lesser knowingly lied under oath to the licensing board and
the ABCC when he swore in his application for approval of the license pledge
that the pledge did not "violate or constitute a default under the terms
of any agreement . . . applicable to [Burn] or any of its property."  Lesser never told the regulators about his
purported belief that the anti-pledge provision was unenforceable.  Instead, he falsely affirmed that the pledge
did not violate any other agreement, notwithstanding that his attorney had told
him that the license could not be pledged and that to do so would be a default
of the lease.  Other evidence, including
his attempt to pay Nicosia $100,000 in cash in a brown paper bag for the
license, provides further support for the judge's factual determinations and
legal conclusions.  For these reasons, we
affirm the trial judge's G. L. c. 93A judgment.[9]
      c. 
Conversion of the liquor license. 
We next consider whether the trial judge erred as a matter of law in
finding the defendants liable to the plaintiffs for conversion of the liquor
license when Burn refused to cooperate with N&M to sell the license
back.  The judge found that the
plaintiffs' damages for the conversion of the license were duplicative of those
awarded for Burn's breach of the lease and under G. L. c. 93A, and
thus our holding on this issue does not affect the total amount of damages
under the judgment.
      In denying the defendants' motion for
summary judgment, the motion judge ruled that the defendants' failure "to
execute all documents and attend all hearings necessary to effectuate the sale
of the [l]icense to [N&M]" plausibly constituted conversion.  Because the motion judge appears to have
found that § 11.24 of the lease provided a basis for the plaintiffs' conversion
claim, and this was the basis of the claim at trial, we turn to that provision
to evaluate the claim.  We conclude, as a
matter of law, that Burn's refusal to cooperate with N&M according to the
terms of this provision constituted a breach of contract, but not conversion.
      "To state a plausible claim of
conversion, a plaintiff must allege that the defendant wrongfully exercised
dominion or control over the personal property of the plaintiff."  Hornibrook v. Richard, 488 Mass. 74, 83
(2021), citing Weiler v. PortfolioScope, Inc., 469 Mass. 75, 87 (2014).  Under Massachusetts law, a plaintiff
generally must either have actual possession of the converted property, Shaw v.
Kaler, 106 Mass. 448, 449-450 (1871), or be entitled to its immediate possession,
Robinson v. Bird, 158 Mass. 357, 360 (1893) (Holmes, J.), at the time of the
defendant's wrongful act.  See J.R. Nolan
& L.J. Sartorio, Tort Law § 4.5, at 83 (3d ed. 2005) ("The key to
the plaintiff's [conversion] claim is his possession or right to
possession. . . .  A
person who exercises serious dominion or control over personal property is
liable to one who had actual possession at the time of the act as well as to
one who was entitled to immediate possession at that time" [footnote
omitted]).
      Here, the plaintiffs cannot state a claim
for conversion because when Burn refused to sell the license back to N&M,
N&M neither actually possessed nor was entitled to immediate possession of
the license.  There were numerous
contractual and regulatory steps required before N&M could reacquire
possession of the license.  In these
circumstances, the proper claim was for breach of contract, not conversion. 
      More specifically, in § 11.24 of the
lease, the parties agreed that "[N&M] has transferred its [license] to
[Burn] for one dollar and other good and valuable consideration."  Thus Burn, and not N&M, was in possession
of the license when Burn refused to cooperate with N&M to sell the license
back.  The cooperation required of Burn
was also delineated in the contract. 
Burn would, "for one dollar . . . sell the [license] to
[N&M] upon expiration or earlier termination" of the lease term.  Burn further agreed to "obtain the
approval of [the licensing board] and ABCC of the resale of the [license] to
[N&M]" and "attend all hearings necessary to effectuate such
sale."  Such regulatory approval,
however, was beyond the control of Burn to grant.  General Laws c. 138, § 23, second
par., also expressly states that "[n]o holder of [a liquor license] shall
have any property right in any document or paper evidencing the granting of
such [liquor license]."[10]  As a
result, any transfer of the license between N&M and Burn could only have an
effect to the extent the licensing board and ABCC approved of the
transaction.  At the time of the alleged
conversion, N&M was neither an approved licensee nor pledgee of the
license.
      Such contractual rights leading to future
possession of property are insufficient to state a claim for conversion.  See Laurin v. DeCarolis Constr. Co., 372
Mass. 688, 690-691 (1977) (where plaintiff had signed purchase and sale
agreement for real property, but title and possession of parcel had not yet
transferred to plaintiff, action for removal of trees, gravel, and loam on
parcel "must be decided, not as a tort action for . . . conversion
. . . , but as a claim for a deliberate and wilful breach of
contract").  For these reasons, the
plaintiffs' conversion claim fails as a matter of law.[11]
      d. 
Attorney's fees.  The defendants
also appeal from the trial judge's award of $394,427 in attorney's fees and
$14,192.64 in costs,[12] on the grounds that the award is excessive and not
adequately documented.  We disagree and
conclude that the trial judge's award was not an abuse of discretion.  See Sutton v. Jordan's Furniture, Inc., 493
Mass. 728, 742 (2024), citing LaChance v. Commissioner of Correction, 475 Mass.
757, 772 (2016) ("We review a judge's award of attorney's fees for an
abuse of discretion").  This case
took over four years to litigate and proceeded through summary judgment to a
jury-waived trial.  The trial judge
assessed the plaintiffs' affidavits and verified billing records and
determined, based on the factors outlined in Linthicum v. Archambault, 379
Mass. 381, 388-389 (1979), that the time expended by the plaintiffs' counsel
was reasonable and supported by the record. 
As we discern no abuse of discretion in that award, we affirm the trial
judge's award of $394,427 in attorney's fees and $14,732.64 in costs.[13]
      3. 
Conclusion.  We hold that the
anti-pledge provision is enforceable and therefore affirm summary judgment in
favor of the plaintiffs on that ground. 
We likewise affirm the G. L. c. 93A judgment and the award of
attorney's fees and costs in favor of the plaintiffs.  We reverse the judgment against the defendants
for conversion of the liquor license.
So ordered.

footnotes

[1] Individually
and as trustee of the N&M Trust VII.

[2] N.I.C.
Limited Partnership.

[3] BL Note
Holding Tremont Street, LLC; Brian Lesser; Andrew Husbands; Timothy Maslow; and
Joseph Matzkin, interested party.

[4] Burn is the
successor entity to Burn, Inc., the original signatory of the lease.

[5] N.I.C.
Limited Partnership is the sole beneficiary of N&M and the record owner of
the leased premises.  Mario Nicosia is
the sole owner and manager of both N.I.C. Limited Partnership and N&M.

[6] Lesser is the
sole manager of BL Note Holding Tremont Street, LLC.

[7] We
acknowledge the amicus briefs submitted by Suzanne Iannella, Pioneer New
England Legal Foundation, and Spark Business Consulting, Inc.

[8] The parties
simultaneously entered into a "negative pledge agreement," in which
Burn similarly covenanted not to pledge the license.

[9] We likewise
discern no merit to the defendants' argument that the denial of their motion
pursuant to Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974), to amend their
pleading to assert an affirmative defense based on c. 93A's safe harbor
provision was reversible error.  The
defendants were allowed to present the defense at trial, despite the denial of
the rule 15 (b) motion to amend the answer, and the trial judge correctly
rejected the defense.  More specifically,
the safe harbor provision exempts from c. 93A liability "transactions
or actions otherwise permitted under laws as administered by any regulatory
board or officer."  G. L.
c. 93A, § 3.  But the record
supports a determination that the regulators' approval of the pledge was
premised on Lesser's false statement that the pledge did not violate or
constitute a default under any agreement, which vitiates the significance of
the regulators' approval as a safe harbor; where the defendants hid their
unfair and deceptive conduct from the regulators, the regulators did not by
their approval give "affirmative permission" to engage in that
conduct.  Aspinall v. Philip Morris,
Inc., 453 Mass. 431, 437 (2009).

[10] As we
conclude that the plaintiffs did not possess the license at the time of the
alleged conversion, we need not address the defendants' argument that there was
no property right in the license that could be converted.

[11] In Laurin,
372 Mass. at 690, we suggested in dictum that even when a plaintiff lacks
actual possession or the right to immediate possession of converted property,
recovery for conversion may nevertheless be warranted if the plaintiff has a
"property interest in the converted property."  See id. (regardless of plaintiff's possessory
right, "[w]e should uphold . . . recovery [for conversion] if it
would have been proper in an action of trespass on the case or in a suit in
equity").  See also Restatement
(Second) of Torts § 243 comment b, at 476 (1965) ("Under the common
law action of trover [a] plaintiff . . . entitled only to future possession,
as in the case of a bailor for a term, could not maintain the
action. . . .  With the
disappearance of the forms of action, it is normally of little consequence,
except as a matter of pleading in a few jurisdictions, whether this action is
now to be called one for conversion or merely for damage to the future interest
. . .").  We nonetheless
conclude that contract and not conversion is the appropriate cause of action
here, given the multiple contractual and regulatory contingencies that must be
satisfied prior to N&M reacquiring possession of the license.

[12] An
additional $540 in filing fees included in the costs awarded is uncontested.

[13] The
plaintiffs have requested an award of appellate attorney's fees and costs in
their brief. As the prevailing party on appeal in a c. 93A, § 11,
action, the plaintiffs are entitled to recover reasonable attorney's fees and
costs.  See H1 Lincoln, Inc., 489 Mass.
at 27 n.18 (citing cases).  The
plaintiffs may file an appropriate application for appellate fees and costs in
this court, pursuant to the procedure established by Fabre v. Walton, 441 Mass.
9, 10-11 (2004).